541 A.2d 1012

Timothy Allen BEACH

v.

STATE of Maryland.

No. 1336, Sept. Term, 1987.

Court of Special Appeals of Maryland.

June 7, 1988.

432

José Felipé Anderson, Asst. Public Defender (Alan H. Murrell, Public Defender, on the brief) Baltimore, for appellant.

Diane E. Keller, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, Richard Cooper, State's Atty. for Charles County and Leonard G. Collins, Jr., Asst. State's Atty. for Charles County on the brief, LaPlata, for appellee.

Submitted before WILNER, BLOOM and ROBERT M. BELL, JJ.

WILNER, Judge.

In 1975, appellant was convicted in the Circuit Court for Charles County of storehouse breaking and sentenced to 10 years in prison. In June, 1978, acting on a previously filed motion for reconsideration, the court suspended the unserved balance of the sentence and placed appellant on probation for two years.

A month later, appellant was charged with violating that probation. At a hearing in October, he admitted the violation, whereupon the court vacated the existing probation but placed him on a new probation. Among the conditions of this new probation were that appellant (1) report to his probation agent as directed, (2) obtain permission from the agent before changing his address, and (3) attend the Sec-

ond Genesis program "and abide by their rules and regulations until released upon satisfactorily completing the program."

On January 16, 1979, a warrant was issued charging appellant with violating each of those conditions. The warrant was based on the agent's assertion that appellant had absconded from the Second Genesis program on November 24, 1978, prior to his completion of the program. At the time the warrant was requested, the probation agent did not know where appellant was.

The warrant was not served until June 10, 1987. The hearing took place a month later, on July 15, 1987.

Appellant moved to dismiss the proceeding because of the delay. Although he proffered that, during the eight-and-a-half year period, he had "not been in jail and has not been involved in the criminal justice system or any other aspect of the courts in Maryland," no evidence was offered as to his whereabouts during that period or his susceptibility to service of the warrant. Nor did the State indicate what, if anything, it had done to locate appellant and serve him with the warrant. Save only for the fact that he wasn't in jail and wasn't in court, there is a complete void of information as to both appellant's whereabouts and the State's efforts to locate and serve him during that long period.

One of the predictable consequences of this delay was the absence of live witnesses for the State. Neither the probation officer charged with supervising appellant in 1978 nor anyone from Second Genesis was called to testify. As a result, appellant's elopement from the program was proved, over his objection, through a copy of a 1978 letter sent by an intake counsellor at Second Genesis to the sentencing judge.

Principally on the basis of that letter and some handwritten notes of appellant's then-probation officer regarding a telephone conversation he had with a Second Genesis employee, the court found that appellant had violated his probation and directed execution of five years of the unex-

pired prison sentence initially imposed. Aggrieved at that disposition, appellant has brought this appeal, complaining that the trial court erred (1) in admitting the copy of the letter from Second Genesis as a business record, (2) in finding that he violated the probation, (3) in revoking the probation and directing partial execution of the initial sentence, and (4) in denying his motion to dismiss based on the delay.

We find no merit in issues (1) and (2). As we have a concern over the delay, however, and as that concern also may affect the disposition, we shall vacate the order and remand for further proceedings.

### (1) *The Letter From Second Genesis*

The document at issue is a copy of a letter dated November 27, 1978. The letter was addressed to Judge Bowling, who had initially sentenced appellant and later placed him on probation (and who heard the instant violation case), and was purported to be written by Scott Barnthouse, an Intake Counsellor for Second Genesis. Referring to appellant by name, it informed Judge Bowling that "the above named individual, who entered treatment at Second Genesis, Inc. on October 26, 1978, has absconded from the program on November 24, 1978." The letter appears to be on the official stationery of Second Genesis, i.e., printed on the paper are the name, address, and principal staff of that organization.

Although the letter shows that a copy was sent contemporaneously to a "Mrs. Seness, Probation," the copy actually admitted into evidence appears to have been sent to the Division of Parole and Probation by Judge Bowling. It shows on it the stamp

"RECEIVED IN CHAMBERS

NOV 28 1978

Judge George W. Bowling"

and was accompanied by a transmittal slip signed by the judge's secretary. The copy was stamped as received by the Division's La Plata office on December 6, 1978.

■ Appellant made no complaint about using the copy of the letter as opposed to the original. His objection was grounded solely on the hearsay rule; he urged that, as the document was a record generated by Second Genesis, it could not be regarded as a record of the Division, and that, absent authentication by an authorized agent of Second Genesis, it would not qualify for admission under Md.Code Ann.Cts. & Jud.Proc. art., § 10–101. Although he now complains that the admission of this document also abridged his Constitutional right of confrontation, which *State v. Fuller,* 308 Md. 547, 520 A.2d 1315 (1987), says is applicable to probation revocation proceedings, his objection below was limited to the hearsay rule, and so that is all we shall consider. Md.Rule 1085.

The key issue here is whether the document was trustworthy, whether the court could reasonably have found that it was made contemporaneously with the event, in the ordinary course of business, without apparent motive to fabricate or falsify the information contained in it—whether, in other words, it was reliable. If so, the document could properly be admitted on either of two bases—because "reasonably reliable hearsay may be received" at a probation revocation proceeding (*State v. Fuller, supra,* 308 Md. at 553, 520 A.2d 1315), or because it would qualify as a business record under § 10–101 notwithstanding that it was generated by Second Genesis.

■ The trial judge, to whom the letter was addressed, obviously regarded it as reliable, and we see no clear error in such a finding. For probation to remain a viable alternative to incarceration, compliance with the conditions laid down by the court must be carefully and effectively monitored. It is therefore important, and expected, that when, as a condition to probation, a person is committed to a program operated by a third-party contractor, that contractor will inform the court or the Division of Parole and Probation if the committed person absconds or otherwise fails in some significant way to comply with the governing condition. The letter to Judge Bowling, then, was not

merely a gratuitous gesture on the part of Second Genesis but rather a compliance with its obligation to the court. Moreover, it is the kind of letter upon which the Division was entitled, and indeed obligated, to act. The current supervisor of the Division's La Plata office testified that it was a regular course of business for the Division to keep such a letter in its files. It formed the basis of the petition to revoke appellant's probation.

In this setting, the letter certainly had a kind of generic reliability. One would not expect a contractor such as Second Genesis to make a false report; nor does the record reveal any motive for it to do so in this case. It is clear from the date of the letter and Judge Bowling's receipt stamp that it was made contemporaneously with the event, and it is reasonably inferable that it was intended to be accepted and acted upon by the court.

■ Because the document was "reasonably reliable," it was admissible whether or not it technically fell within the statutory business record exception to the hearsay rule. See *State v. Fuller, supra,* 308 Md. at 553, 520 A.2d 1315. But the fact is also that, under prevailing case law, it would indeed qualify for admission under Cts. & Jud.Proc. art., § 10–101.

In *Brown v. State,* 1 Md.App. 664, 232 A.2d 820 (1967), we interpreted the predecessor to § 10–101 (Md.Code Ann. (1957), art. 35, § 59) as allowing the admission of both a money order and a "stop payment" attachment through the testimony of the store owner who cashed the money order. Quoting in part from *Bethlehem–Sparrows Point Shipyard v. Scherpenisse,* 187 Md. 375, 381, 50 A.2d 256 (1946), we concluded that the purpose of the statute was "to put an end to the narrowness in the use of the familiar rule of evidence that the person whose statement is received as testimony should speak from personal observation or knowledge, and to bring the rule of evidence nearer to the standards in responsible action outside of the courts." 1 Md.App. at 666, 232 A.2d 820. See also *Morrow v. State,*

190 Md. 559, 59 A.2d 325 (1948), where a sales slip prepared by a garageman in South Carolina was held admissible notwithstanding that the garageman was not present to authenticate it.

A similar approach has been taken by the Federal courts construing Rule 803(6) of the Federal Rules of Evidence.[1] In *United States v. Veytia–Bravo,* 603 F.2d 1187 (5th Cir.1979), for example, the defendant was convicted of Federal firearms offenses based on sales records of a company that had gone out of business and turned over its records to a Federal agency. Noting that "[t]he primary emphasis of Rule 803(6) is on the reliability or trustworthiness of the records sought to be introduced, and the trial judge exercises broad discretion in determining the inadmissibility," *id.,* 1189, the Court held, at 1191: "Rule 803(6) does not require that the records be prepared by the business which has custody of them. Where circumstances indicate that the records are trustworthy, the party seeking to introduce them does not have to present the testimony of the party who kept the record or supervised its preparation." See also *Miss. River Grain Elev. v. Bartlett & Co., Grain,* 659 F.2d 1314 (5th Cir.1981), where, in an action by a vendor against its vendee for shortweighing grain sales, weight certificates prepared by third parties were held admissible without authentication by the parties preparing the certificates; *United States v. Flom,* 558 F.2d 1179 (5th

---

1. Rule 803(6) provides, in relevant part:
   "The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
   \* \* \* \* \*
   **(6) Records of Regularly Conducted Activity.**
   A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness."

Cir.1977), where invoices prepared and sent by a third party were held admissible as business records of the recipient; *United States v. Carranco,* 551 F.2d 1197 (10th Cir.1977), allowing admission of a freight bill prepared by a third party; *United States v. Parker,* 749 F.2d 628 (11th Cir. 1984), where a certificate prepared by an exporter was held properly authenticated by the testimony of the importer who received it. Compare *NLRB v. First Termite Control Co., Inc.,* 646 F.2d 424 (9th Cir.1981).

### (2) *Finding of Violation*

■ Appellant urges that the court was "clearly erroneous" in finding that he had violated the conditions of his probation. His attack is premised on the notion that the letter from Second Genesis was "the only basis" for that finding and that the finding therefore rests on "unreliable hearsay in violation of Appellant's due process rights." As we have held the letter both reliable and admissible, however, this argument fails for want of a correct major premise.

### (3), (4) *Delay and Disposition*

The issue of delay in bringing a violation of probation charge to hearing was considered by the Court of Appeals in *State v. Berry,* 287 Md. 491, 413 A.2d 557 (1980). The principal holding there was that if the defendant violates the terms of his probation during the probationary period, the court may revoke the probation "even if the proceedings incident to revocation may not have been completed during that period." *Id.,* 499, 413 A.2d 557. The Court hastened to add, however:

> "Our holding that the State may conduct a revocation hearing at any time, even if the probationary period has expired, is not intended to imply that the state is relieved of *its obligation to initiate and consummate such hearings diligently and promptly.* The probationer is entitled to a fair hearing where he can confront his accusers and present his defense.... It is not merely the right to a hearing which is guaranteed, but the fairness of that

hearing as well. 'The proceedings are to be tested by fundamental fairness—the touchstone of due process.'
. . .

Numerous cases support our view that in order to comply with the dictates of due process, the State *must bring about the revocation hearing with due diligence or reasonable promptness so as to avoid prejudice to the defendant....* We also believe that whether the State has been reasonable in proceeding with a revocation hearing is the test. We do not perceive the need to set forth the factors a court will consider in determining whether the State has been diligent in instituting and conducting hearings under the statute here involved. However, we think it fair to say that, at a minimum, the State should make reasonable efforts to initiate the proceedings and to locate and serve the defendant with process so as to bring him to trial promptly. On the other hand, we think the trial court should consider the availability of the defendant to receive such process and the extent to which he has made his presence known in the community in which he lives. While what action is timely, diligent or reasonable will differ on a case by case basis, we do believe that inactivity and inattention by the State for an inordinate period of time, where the defendant has been available and has not concealed his whereabouts, may be sufficient to persuade a court that fundamental fairness should prevent the State from proceeding with the revocation hearing."

(Citations omitted; emphasis added.) *Id.,* 499–501. See also *Boone v. State,* 55 Md.App. 663, 465 A.2d 1195 (1983).

It goes without saying that the court can hardly consider these factors if no evidence pertaining to them is presented. How can it determine whether the State has made reasonable efforts to locate and serve the defendant if there is no evidence of the efforts it made? How can it determine whether the defendant has been available for service if there is no evidence of where he was (or even where he wasn't)?

■ The *Berry* Court spoke in terms of the State's "obligation" to initiate and consummate hearings diligently and promptly; it placed on the State the responsibility "to locate and serve the defendant." It follows from this that, when faced with a motion to dismiss based upon an inordinate delay in conducting the hearing, the State has an initial burden to explain to the court what efforts it made to locate and serve the defendant. If that explanation fails to establish, at least *prima facie*, that its efforts were reasonable, it will necessarily have failed to meet the "obligation" placed on it in *Berry*. If, on the other hand, it documents an effort that appears, at least *prima facie*, to be reasonable, the defendant should then be required to support his motion by showing that he was, in fact, available for service and that he was not concealing himself or engaged in avoiding detection and service. Only through that kind of process can a proper basis be developed for making an overall judgment as to whether the State has indeed acted reasonably and with the requisite diligence.

■ As we indicated, the State was not called upon to explain what, if any, efforts it had made between January, 1979, and June, 1987, to locate and serve appellant; nor is there anything in the record beyond counsel's assertion that appellant was neither in jail nor in court, to indicate where he was or what he was doing during that period. This void places in some doubt both the State's ability to proceed with its petition and, assuming that it could proceed, the court's ultimate decision to revoke the probation and direct execution of the prison sentence. If, as appellant tells us in his brief, he was indeed a law-abiding citizen throughout the nearly nine-year period since his elopement from Second Genesis, and if, in fact, he was reasonably available for service during any substantial part of that period, the court may well have abused its discretion in sending him back to prison for five years.

We believe that justice will be served best by neither affirming nor reversing the order entered below, but by vacating it and remanding the case to the Circuit Court for

**442**

further proceedings pursuant to Md.Rule 1071 a. On remand, the court should require and consider the kind of evidence noted in this Opinion and, based on that evidence, determine (1) whether the petition should be dismissed for lack of diligence on the part of the State, and (2) if the petition is not dismissed, whether imprisonment is an appropriate sanction for appellant's dereliction in 1978. ORDER REVOKING PROBATION AND DIRECTING EXECUTION OF SENTENCE VACATED; CASE REMANDED TO CIRCUIT COURT FOR CHARLES COUNTY FOR FURTHER PROCEEDINGS; CHARLES COUNTY TO PAY THE COSTS.