612 A.2d 288

**Robert Lee BAILEY**

v.

**STATE of Maryland.**

No. 154, Sept. Term, 1991.

Court of Appeals of Maryland.

Sept. 17, 1992.

**690**

Victoria S. Lansburgh, Asst. Public Defender (Stephen E. Harris, Public Defender, both on brief), Baltimore, for petitioner.

Annabelle L. Lisic, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and ROBERT M. BELL, JJ.

CHASANOW, Judge.

On February 12, 1990, Robert Lee Bailey pled guilty in the Circuit Court for Anne Arundel County to battery and a fourth degree sex offense. Judge Raymond G. Thieme, Jr., sentenced Bailey to a one-year term of confinement, which he then suspended and placed Bailey on five years probation subject to certain conditions. One of those conditions,

spelled out in the Order for Probation, was that Bailey begin active participation in a residential treatment program at Omni House, Inc. by February 22, 1990. Omni House is a private, non-profit organization in Anne Arundel County funded by the State Department of Health and Mental Hygiene to work with troubled individuals.

Shortly thereafter, Bailey petitioned the court to modify his sentence. After encountering problems getting admitted to Omni House's residential program by the required date, Bailey was accepted only into that organization's daytime program; however, he was also accepted into the residential program at St. Paul House in Baltimore City. He sought to secure the court's approval to modify the conditions of probation and receive his treatment in both programs. On April 16, 1990, Judge Thieme granted Bailey's request and signed a new order of probation specifying, in part, that Bailey was to enter St. Paul House "for at least 6 months and successfully complete that program" as well as the daytime program offered at Omni House. On October 1, 1990, the State charged Bailey with having violated this condition of his probation by failing to successfully complete the six month program at St. Paul House.

At a hearing on December 14, 1990, Judge Thieme ruled that Bailey had violated the terms of his probation and re-imposed the remainder of his original sentence. Bailey appealed to the Court of Special Appeals, which affirmed the trial judge's order in an unreported opinion. On Bailey's petition, we granted certiorari to review the decision of the Court of Special Appeals. The question before us is whether Bailey's right of confrontation was violated when, at the probation revocation hearing, the trial court admitted into evidence and relied on a letter from St. Paul House stating among other things that Bailey had been discharged from its program. The contents of the letter were hearsay; on this, both Bailey and the State agree. They do not agree, however, on the standards for admissibility of hearsay at probation revocation hearings, or the application of those standards to the facts of this case. We conclude that

the evidence was properly admitted by the trial judge for the limited purpose of proving that Bailey did not complete the St. Paul House program. Therefore, we affirm the revocation of Bailey's probation.

## I.

At Bailey's probation revocation hearing, the State called Bailey's probation officer, Linda Anderson. Anderson testified that Bailey had not abided by the rules of his probation because he did not successfully complete the six month program at St. Paul House. Anderson testified that the source for her initial report on Bailey's probation violation was a letter on St. Paul House letterhead received on August 17, 1990, but she also had subsequent discussions with Bailey about his leaving St. Paul House. The letter on St. Paul House letterhead read as follows:

August 17, 1990

To all concerned parties:

Be it herein certified that one, Robert Bailey, has been officially discharged from residency at St. Paul House for the following:

(1) VIOLENT, ABUSIVE & EXCESSIVELY DISRUPTIVE BEHAVIOR TO RESIDENTS AND STAFF

(2) FAILURE TO PARTICIPATE IN A CONSISTENT SCHEDULED ACTIVITY AT LEAST FOUR (4) HOURS DAILY, MON.—FRI.

(3) FAILURE TO ATTEND MANDATORY HOUSE MEETINGS

(4) FAILURE TO PERFORM HOUSEKEEPING DUTIES WITHOUT EXCUSE FROM STAFF

Despite exhaustive efforts by staff to assist Robert in maintaining his placement at St. Paul House, he has persisted in violating the stated terms of residency which culminated in his nearly knocking down a female staff member as she entered the room while Robert was verbally abusing another staff person.

Robert continued his maniacal display of belligerence and stormed out of the house, subsequently driving off in a rage. This kind of behavior exemplifies the way Robert typically handles admonishment from staff regarding his frequent non-compliance with St. Paul House rules.

Furthermore, staff was threatened and harassed by Robert's father, who obviously had been told by him that staff struck him. Robert could be heard making racial slurs in the background. His father also harassed a resident who refused to support them in conspiring to corroborate Robert's vengefully contrived allegation. Robert has since been advised and instructed to pick-up any remaining belongings as well as the unused portion of his rent for the month of August.

Sincerely,

L. Stark [1]

Defense counsel objected to the introduction of this letter, asserting that the letter writer's absence from the hearing denied Bailey his confrontation rights. The trial judge held that Bailey did not have a right to confront the author of the letter and admitted it. The trial judge ruled alternatively (1) that the letter was a business record and (2) even if it was not a business record, the letter was admissible because "the hearsay in it [was] inherently reliable, particularly as to him leaving the House." After Anderson testified, Bailey's father then testified on his son's behalf. Bailey's father acknowledged that his son did not complete the St. Paul House program, although he contended that Bailey told him that he was abused at St. Paul House and thrown out because he could not get a job. Bailey did not testify on his own behalf. On the basis of the evidence before the court, the circuit court revoked Bailey's probation.

---

1. The signature on the letter is difficult to read, and no name is typed in below it. The exact identity of the signer was never established at the hearing.

Bailey appealed from the trial judge's decision to admit the St. Paul House letter and from the subsequent revocation of his probation.

## II.

■ A probation revocation hearing "typically involves two distinct components: (1) a retrospective factual question whether the probationer has violated a condition of probation; and (2) a discretionary determination by the sentencing authority whether violation of a condition warrants revocation of probation." *Wink v. State,* 317 Md. 330, 332, 563 A.2d 414, 415 (1989) (quoting *Black v. Romano,* 471 U.S. 606, 611, 105 S.Ct. 2254, 2257, 85 L.Ed.2d 636, 642 (1985)). Initially, the State carries the burden of proving the probation violation, and must do so by a preponderance of the evidence. *Wink,* 317 Md. at 332, 563 A.2d at 415. In the instant case, the State would have the burden of proving that Bailey failed to successfully complete the six month St. Paul House program. If the State meets this burden, the burden of persuasion shifts to the probationer, and "ordinarily probation may not be revoked if the *probationer proves* that his failure to comply was not willful but rather resulted from factors beyond his control and through no fault of his own." *Humphrey v. State,* 290 Md. 164, 167–68, 428 A.2d 440, 443 (1981) (emphasis added); *Turner v. State,* 307 Md. 618, 626, 516 A.2d 579, 583 (1986); *Hudgins v. State,* 292 Md. 342, 348–49, 438 A.2d 928, 931 (1982); *Coles v. State,* 290 Md. 296, 308, 429 A.2d 1029, 1035 (1981); *see also* 3 LaFave & Israel, *Criminal Procedure* § 25.4, at 154 (1984).

*Coles v. State,* 290 Md. 296, 429 A.2d 1029 (1981), illustrates the distribution of the burdens of proof and persuasion at probation revocation hearings. In *Coles,* the defendant was convicted of public assistance fraud. The circuit judge gave Coles a suspended sentence and placed him on probation on the condition that he make restitution of over $30,000. When Coles failed to make restitution, the circuit court revoked his probation. On appeal we affirmed the

circuit court and applied *Humphrey*'s two-step framework. We reasoned that at a probation revocation hearing

"the judge assumes the role of factfinder to determine: in the first instance, whether *the State has met its obligation* of showing that there has been a failure of compliance with a condition of probation, and if so, secondly, whether the *probationer has carried out his burden of establishing that the violation 'resulted from factors beyond his control and through no fault of his own.'*" (Emphasis added).

*Id.* at 308, 429 A.2d at 1035 (quoting *Humphrey,* 290 Md. at 168, 428 A.2d at 443). In *Coles,* the trial judge found that Coles had not met his burden of proving that his violation was non-willful, and therefore did not err in revoking his probation. *Id.* [290 Md.] at 309, 429 A.2d at 1035.

The trial court's determination to revoke probation is reviewable by an appellate court on an abuse of discretion standard. *State v. Dopkowski,* 325 Md. 671, 678, 602 A.2d 1185, 1188 (1992). Ordinarily, "[a]buse of discretion will be found only if the trial court has erroneously construed the conditions of probation, has made factual findings that are clearly erroneous, or has acted arbitrarily or capriciously in revoking probation." *Id.* (quoting *Herold v. State,* 52 Md. App. 295, 303, 449 A.2d 429, 433 (1982)).

### III.

Bailey contends that the St. Paul House letter constituted inadmissible hearsay and violated his right of confrontation. Bailey first argues that the St. Paul House letter does not meet the requirements of the business records exception to the hearsay rule codified in Maryland Code (1974, 1989 Repl.Vol.), Courts & Judicial Proceedings Article, § 10–101.[2]

---

**2.** Maryland Code (1974, 1989 Repl.Vol.), Courts & Judicial Proceedings Article, § 10–101 provides:

"(a) *Definition of 'business'.*—'Business' includes business, profession, and occupation of every kind.

Further, he argues that the letter is also too unreliable to be admitted under even the relaxed evidentiary standards which he acknowledges are permitted in a probation revocation hearing.

### A.

The record indicates that the St. Paul House letter was relied on by the trial judge to establish the fact that Bailey left St. Paul House before successfully completing the six month program. Bailey initially contends that the letter was inadmissible hearsay because it was neither a business record of the Division of Parole and Probation nor of St. Paul House.

Ordinarily we might begin our analysis by determining whether the letter met the technical requirements of a business record and was therefore admissible as an exception to the hearsay rule. In the instant case, we see no need to make the determination of whether the letter was admissible as a business record of the Division or of St. Paul House. Even if we assume that the letter could not be admitted as a business record, it will nonetheless be admissible as "reasonably reliable hearsay" under the standards we discuss below.

### B.

 This Court has characterized probation as "a matter of grace, not entitlement, which permits a wrongdoer to keep his freedom 'as long as he conducts himself in a

---

(b) *Admissibility.*—A writing or record made in the regular course of business as a memorandum or record of an act, transaction, occurrence, or event is admissible to prove the act, transaction, occurrence, or event.

(c) *Time of making records.*—The practice of the business must be to make such written records of its acts at the time they are done or within a reasonable time afterwards.

(d) *Lack of knowledge of maker.*—The lack of personal knowledge of the maker of the written notice may be shown to affect the weight of the evidence but not its admissibility."

manner consonant with established communal standards and the safety of society.' " *Kaylor v. State*, 285 Md. 66, 75, 400 A.2d 419, 424 (1979) (quoting *Scott v. State*, 238 Md. 265, 208 A.2d 575 (1965)). Thus, the rules of evidence, including rules against the admission of hearsay, are relaxed at probation revocation hearings.[3]

■ Further, because probation revocation is not a stage of the criminal process, the full panoply of rights due a defendant in a criminal prosecution is not required at a probation revocation hearing. *Gagnon v. Scarpelli*, 411 U.S. 778, 782, 93 S.Ct. 1756, 1759–60, 36 L.Ed.2d 656, 662 (1973); *Morrissey v. Brewer*, 408 U.S. 471, 480, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484, 494 (1972); *see also Chase v. State*, 309 Md. 224, 239, 522 A.2d 1348, 1355 (1987); *Howlett v. State*, 295 Md. 419, 424, 456 A.2d 375, 378 (1983). Nonetheless, a probationer is entitled to due process at such a hearing. *Gagnon*, 411 U.S. at 783 n. 4, 93 S.Ct. at 1760 n. 4, 36 L.Ed.2d at 662 n. 4 (citing *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)). In particular, we recognized in *State v. Fuller*, 308 Md. 547, 552–53, 520 A.2d 1315, 1317–18 (1987), that there is some right of confrontation, pursuant to the Sixth Amendment to the United States Constitution, which is guaranteed to a probationer at a probation revocation hearing. The right of confrontation at a probation revocation hearing differs, however, from the right of confrontation at a criminal trial and some hearsay may be admitted in a revocation hearing. *Id.*

■ Proffered evidence generally is first tested against the formal rules of evidence to determine whether it fits any of the "firmly rooted" exceptions to the hearsay rule. If it fits, then it ordinarily will be admitted at a criminal trial or a probation revocation proceeding over a Confronta-

---

**3.** It is noteworthy that under the Federal Rules of Evidence, Rule 1101(d)(3) specifically provides that the Federal Rules of Evidence, including the general prohibition of the use of hearsay, are not applicable to probation revocation proceedings.

tion Clause objection. *White v. Illinois*, —— U.S. ——, ——, 112 S.Ct. 736, 743, 116 L.Ed.2d 848, 859 (1992); *Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597, 608 (1980) ("'hearsay rules and the Confrontation Clause are generally designed to protect similar values ... and stem from the same roots'" (Citations omitted)). However, hearsay evidence not coming within any firmly rooted hearsay exception may still be admitted at a probation revocation hearing if the trial judge decides that it is "reasonably reliable" and determines that there is good cause for its admission. *Fuller*, 308 Md. at 553, 520 A.2d at 1318.

The question of what constitutes good cause to admit hearsay has never been fully resolved in Maryland. As we noted in *Fuller*, the Supreme Court has not provided much guidance on the subject. *Id.* at 553 n. 5, 520 A.2d at 1318 n. 5. We recognized in *Fuller* that good cause "need not reach the high standard governing the admissibility of hearsay evidence at criminal trials." *Id.* Some of the factors that are relevant to this good cause determination are: the availability of the hearsay declarant, the reliability of the State's evidence offered in lieu of live testimony, and whether the evidence is offered to prove the principal contested issue in the violation or a matter peripheral thereto. *Id.* at 553–54 n. 5, 520 A.2d at 1318 n. 5. In determining whether there is good cause to admit hearsay in a probation revocation hearing, it is obvious that the most important factor is the reliability of the proffered hearsay evidence. Indeed, many courts have held that whenever the proffered hearsay evidence has substantial guarantees of trustworthiness the hearsay is admissible without the need to establish any additional good cause. *See, e.g., Egerstaffer v. Israel*, 726 F.2d 1231, 1234 (7th Cir.1984); *United States v. Burkhalter*, 588 F.2d 604, 607 (8th Cir.1978); *United States v. Pattman*, 535 F.2d 1062, 1064 (8th Cir. 1976). We agree with the statement in *Egerstaffer* that "a probationer's due process rights will be amply protected

whenever proffered evidence bears substantial indicia of reliability." 726 F.2d at 1235.

We turn now to Bailey's contention that the St. Paul House letter was not reasonably reliable. Under the standards of *Gagnon* and *Fuller,* we find that the St. Paul House letter was sufficiently reliable to satisfy both evidentiary and constitutional requirements when admitted for the limited purpose of showing that Bailey did not complete the St. Paul House program. Thus, the trial court did not err by admitting it in the probation revocation hearing.

### A.

 The reliability of hearsay introduced by a party at a probation revocation hearing is essentially a fact specific issue. As such, it is difficult for this Court to formulate any bright-line standards, and we must rely on the trial judge's discretion. The trial judge's determination must stand unless we can find an abuse of discretion. *See Dopkowski,* 325 Md. at 678, 602 A.2d at 1188. Several factors help determine whether hearsay evidence bears a sufficient degree of reliability so as not to offend the Confrontation Clause at a probation revocation hearing. These factors include: the presence of any additional evidence which corroborates the proffered hearsay; the type of and centrality of the issue that the hearsay is being offered to prove; and the source of the hearsay, including the possibility of bias or motive to fabricate. This is not an all-inclusive list, as other factors may affect a court's evaluation of reliability. Furthermore, the facts and circumstances of a particular case may undermine the trustworthiness of hearsay evidence that otherwise might enjoy a high degree of reliability. *Compare United States v. Penn,* 721 F.2d 762, 765–66 (11th Cir.1983) (noting the general reliability of urinalysis drug tests and permitting admission in probation revocation hearing) *with Wilson v. State,* 70 Md.App. 527, 534, 521 A.2d 1257, 1261 (1987) (recognizing that other courts have found the type of test reliable, but finding that this particular urinalysis test was unreliable

since the lab did not perform a backup test or identify lab test results, and State left questions about how probationer's diabetes affected the results).

 Courts have looked to various considerations as possible indicators of reliability. One of these factors is the presence of corroborative evidence. *See, e.g., Egerstaffer v. Israel,* 726 F.2d 1231, 1235 (7th Cir.1984); *People v. Maki,* 39 Cal.3d 707, 217 Cal.Rptr. 676, 683, 704 P.2d 743, 750 (1985); *State v. Finch,* 153 Vt. 216, 569 A.2d 494, 495 (1989). For example, in *Finch,* the Supreme Court of Vermont upheld a lower court's revocation of probation where three sources of hearsay evidence corroborated each other. In that case, Finch was placed on probation subject to the condition that he not purchase, drink, or possess alcohol. At Finch's revocation hearing, the trial court found that he had violated this condition of his probation on the basis of his probation officer's hearsay testimony. The probation officer testified that Finch's mother told him that Finch went to work intoxicated and police had to physically remove him from the workplace. The probation officer likewise talked with a police officer who removed Finch from his place of work and testified that the officer had told him that during the incident Finch was both verbally and physically assaultive. Finally, the probation officer relied on a report from a detoxification center indicating that Finch received treatment there after the incident at his workplace. The Vermont Supreme Court upheld the revocation. It found that the mother and police officer were sufficiently reliable hearsay sources since their statements concerned the same event and corroborated each other. It also noted that the detoxification center report appeared to be the kind of report where the "specter of questionable credibility and veracity is not present." *Id.* [569 A.2d] at 495.

A second consideration may be whether the proffered hearsay is an objective fact reported by the declarant or instead contains conclusions which ought to be tested by cross-examination. For instance, in *United States v. Patt-*

*man*, 535 F.2d at 1063, the terms of Pattman's probation had required him both to notify his probation officer if he was arrested and to remain at all times in the Eastern District of Missouri. The court upheld the admission of a police report, without the testimony of the arresting officer, to show that Pattman had been arrested in the Western District of Missouri and failed to report it. In *United States v. Bell*, 785 F.2d 640 (8th Cir.1986), a condition of Bell's probation was that he "obey all local, state and federal laws." *Id.* at 642. He was subsequently arrested for driving while intoxicated, possession of marijuana, and possession of narcotic paraphernalia. At his probation revocation hearing, the state sought to have the arrest report admitted as evidence of Bell's probation violation, and it was admitted by the trial judge. Reviewing the admissibility of the report, the Eighth Circuit used *Pattman* to draw a distinction. It said that "[w]hile police reports may be demonstrably reliable evidence of the fact that an arrest was made ... they are significantly less reliable evidence of whether the allegations of criminal conduct they contain are true." *Bell*, 785 F.2d at 644. Thus, whether proffered hearsay evidence is a straightforward, objective fact observed by the declarant, or whether it contains inferences or conclusions drawn by the declarant, will weigh in the court's determination of its reliability.

Third, the source of the proffered hearsay as well as any bias or motive to fabricate by the hearsay declarant may be an indicator of its reliability. *Compare Brown v. State*, 317 Md. 417, 423–25, 564 A.2d 772, 775 (1989) (codefendant's statements which reduced his own culpability and inculpated defendant found inherently unreliable); *with Beach v. State*, 75 Md.App. 431, 437, 541 A.2d 1012, 1014 (1988) (letters from state sanctioned probation program found reliable because of trustworthiness of source and absence of any motive to fabricate). In *Beach*, the Court of Special Appeals decided a case very similar to the one at hand. There, Beach's probation was conditioned on his completion of a program at Second Genesis, a state-sanctioned halfway

house. After a revocation hearing, the trial judge revoked Beach's probation. The basis of revocation was a letter from Second Genesis stating that Beach had "absconded from the program." In affirming the circuit court, the Court of Special Appeals held that regardless of whether the letter was admissible as a business record, it was admissible as "reasonably reliable hearsay." The court reasoned that

> "[f]or probation to remain a viable alternative to incarceration, compliance with the conditions laid down by the court must be carefully and effectively monitored. It is therefore important, and expected, that when, as a condition to probation, a person is committed to a program operated by a third-party contractor, that contractor will inform the court or the Division of Parole and Probation if the committed person absconds or otherwise fails in some significant way to comply with the governing condition. The letter ... was not merely a gratuitous gesture ... but rather a compliance with its obligation to the court. Moreover, it is the kind of letter upon which the Division was entitled, and indeed obligated, to act.... [T]he letter certainly had a kind of generic reliability. One would not expect a contractor such as Second Genesis to make a false report; nor does the record reveal any motive for it to do so in this case."

*Id.* at 436–37, 541 A.2d at 1014. Simply stated, the source of the proffered hearsay bolstered its reliability. We note that other courts have admitted hearsay reports from treatment centers in probation violation proceedings. *See, e.g., United States v. McCallum,* 677 F.2d 1024 (4th Cir.), *cert. denied,* 459 U.S. 1010, 103 S.Ct. 365, 74 L.Ed.2d 400 (1982); *Marshall v. Commonwealth,* 638 S.W.2d 288 (Ky.App. 1982).

B.

On the facts before us, we hold that the trial judge did not err in finding the St. Paul House letter reasonably reliable on the issue of whether Bailey completed the St.

Paul House program. Several of its characteristics provide sufficient indicia of reliability under the principles discussed above.

First, the trial judge was entitled to place great weight on the fact that the St. Paul House letter was corroborated by Bailey's own tacit admissions to his probation officer. Thus, the letter did not stand by itself.

Second, the probation condition is a straightforward one. Bailey either did or did not successfully complete the program, and the St. Paul House letter was admitted for the simple, objective, and uncontroverted fact that Bailey did not successfully complete the program. The trial judge indicated that he found the letter to be "inherently reliable," particularly on the issue of his "leaving the [St. Paul] House." We might have a different case if the State were alleging that Bailey violated his probation based on characterizations of Bailey's behavior or opinions about his motivation that were contained in the letter. The trial judge, however, ascribed reliability to and utilized only the portions of the letter which indicated Bailey did not complete the St. Paul House program. As the trial transcript indicates, the court did not rely on those portions of the letter which drew conclusions about and characterized Bailey's behavior, presumably because these were irrelevant to the issue for which the State introduced the letter.

Bailey also contends that the letter was offered to prove the additional proposition that the violation was willful. The State, however, does not carry the burden of proving the violation was willful—only that the violation occurred. Proving that the violation resulted through no fault of his own is the probationer's burden. The letter was offered by the State solely to meet its burden of proving that Bailey did not successfully complete the St. Paul House six month program. Bailey then had the burden of showing that he was discharged from the program through no fault of his own. Bailey's only and rather weak attempt to offer any such evidence was through the testimony of his father who

could merely relate hearsay statements about what Bailey had told him regarding why he left St. Paul House.

Third, we find the source of the hearsay statement a reliable one, applying the persuasive analysis in *Beach v. State*. Like Second Genesis in *Beach*, St. Paul House, a structured half-way house, occupied a special role in the State's probation system. St. Paul House, like Second Genesis, was duty-bound to report to the Division of Parole and Probation or the court any failure of the probationer to comply with its conditions for the completion of its program. St. Paul House's letter was not a gratuitous gesture, but a means of fulfilling its obligation to the State. The trial judge was justified in determining that the letter had a sufficient degree of reliability and credibility. While the fact that a letter is generated by a sanctioned rehabilitation program is not always dispositive of its reliability, this letter was admitted for its simple and, we think, reliable statement that Bailey prematurely left the program. Although the letter's second half goes much further, the judge made it plain that the portion of the letter on which he was relying was the portion concerning Bailey's departure from St. Paul House. We doubt that the letter's other strong language was capable of distracting a seasoned trial judge and affecting his ultimate determination of a case.

In conclusion, considering the presence of corroborative evidence, the narrowness of the proposition the State sought to establish, and the source of the hearsay statement, we agree with the trial judge that the hearsay statement contained in the St. Paul House letter was reasonably reliable.

■ We further hold that good cause to admit the letter was apparent from the record. As we stated above, a trial judge may consider the reliability of the proffered hearsay as a major factor in determining good cause to admit the hearsay. In addition, the trial judge was also entitled to consider the inconvenience of calling a witness from St. Paul House to prove the uncontested fact that Bailey failed

to complete the program, a fact Bailey implicitly acknowledged in his discussions with his probation officer and also corroborated through his father's testimony. The fact that the letter's author was not shown to be unavailable is not dispositive. The same reasons that an author of a business record need not be shown to be unavailable (*i.e.*, inconvenience, probable lack of recollection of a routine business event, etc.) to admit the business record could also be considerations in determining good cause to admit the St. Paul House letter without establishing the unavailability of the letter's author.

For the reasons indicated, we find that good cause existed to admit the hearsay and that Bailey's right of confrontation was not impinged upon. The trial judge did not err in admitting the letter to establish that Bailey failed to successfully complete the six month program at St. Paul House.

JUDGEMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY PETITIONER.