846 A.2d 477

**Tiara Cardell THOMPSON**

v.

**STATE of Maryland.**

**No. 1065, Sept. Term, 2002.**

Court of Special Appeals of Maryland.

April 8, 2004.

See also 139 Md.App. 501, 776 A.2d 99.

240

Michael R. Braudes (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Zoe Gillen White (J. Joseph Curran, Jr., Attorney General, on the brief), Baltimore, for appellee.

Panel: DAVIS, KENNEY, DEBORAH S. EYLER, JJ.

DAVIS, Judge.

Tiara Cardell Thompson, appellant, was the subject of a probation revocation hearing in the Circuit Court for Prince George's County on May 3, 2002. The trial judge found that appellant had violated a condition of his probation as a result of his involvement in another crime and imposed a six-year term of incarceration. Appellant filed an appeal on June 3, 2002.

Appellant presents one question for our review, which we rephrase as follows:

Did the trial court err in revoking appellant's probation?

We answer the question in the affirmative and, accordingly, vacate the judgment of the circuit court.

## FACTUAL BACKGROUND

On August 6, 1999, appellant pled guilty to second-degree assault and was sentenced by the trial judge to eight years' incarceration, with all but 198 days suspended. The trial judge further ordered that appellant be placed on probation for one year following his incarceration.

On November 11, 1999, while appellant was on probation, he was arrested on charges stemming from the murder of Clifford Bell in Prince George's County on the previous day. Appellant was convicted on June 29, 2000 of second degree murder and use of a handgun in the commission of a felony or crime of violence and, on August 25, 2000, the circuit court sentenced appellant to forty years' incarceration.

On direct appeal, we ordered a limited remand for the circuit court to consider whether certain search warrants executed and utilized to search appellant's apartment had been properly authorized by a judge. *Thompson v. State,* 139 Md.App. 501, 776 A.2d 99 (2001). On remand, the circuit court determined that the warrants were invalid and, on November 28, 2001, granted appellant a new trial.

Appellant's second trial commenced on March 25, 2002, at the conclusion of which a jury ultimately acquitted appellant on all charges. After the acquittal, the State requested that appellant's probation in the instant case be revoked for murdering Bell. The matter came before the trial judge on May 3, 2002. As part of its case, the State presented transcripts of the testimony of two witnesses, Joseph Montgomery and Renee Beaty, adduced at appellant's previous trials. Montgomery had testified that he was with appellant and Bell in an apartment complex on November 10, 1999 and personally witnessed appellant shoot Bell during a dispute regarding the payment of money. Beaty testified that she was sitting on the steps in front of the apartment complex when she heard the gunfire and, within seconds, saw Bell and Montgomery run out of the building. She further testified that she ran for cover and witnessed appellant exiting the building several moments later. Over defense counsel's objection, the trial judge admit-

ted the transcripts in lieu of live testimony from Montgomery and Beaty. The trial judge found that appellant had violated his probation by failing to obey all laws and imposed the eight-year sentence of incarceration with credit for two years and 335 days for time already served.

This appeal followed.

## LEGAL ANALYSIS

Appellant contends that the trial court improperly admitted the transcripts of Montgomery and Beaty when the State did not demonstrate good cause for failing to call the two witnesses to personally appear before the lower court. Alternatively, appellant argues that, if good cause existed, the transcripts do not fall into any recognized exception to the hearsay rule. The State counters that the lower standard of proof and the relaxed rules of evidence for probation revocation hearings permit the trial judge to consider the transcripts in the place of live testimony as long as the testimony elicited in the transcripts was subject to cross-examination by the opposing party.

We review a trial judge's decision to revoke probation by the "abuse of discretion" standard. *Bailey v. State,* 327 Md. 689, 696, 612 A.2d 288 (1992). Thus, a probation revocation will remain undisturbed on appeal unless it is "clearly erroneous or legally insufficient." *Gibson v. State,* 328 Md. 687, 697, 616 A.2d 877 (1992) (citing *Wink v. State,* 317 Md. 330, 339, 563 A.2d 414 (1989)).

Probation is " 'a matter of grace, not entitlement' " that allows a defendant to maintain his or her freedom for as long as he or she follows the conditions of probation and acts in keeping with the standards and safety of the community. *Bailey,* 327 Md. at 697–98, 612 A.2d 288 (quoting *Kaylor v. State,* 285 Md. 66, 75, 400 A.2d 419 (1979)). Prior to the revocation of a defendant's probation, a trial court is required to conduct a hearing pursuant to Maryland Rule 4–347(e). The rule permits the trial court to "conduct the revocation hearing in an informal manner and, in the interest of justice,

may decline strict application of the rules [of evidence set forth] in Title 5, except those relating to the competency of witnesses." Md. Rule 4–347(e)(2). "Thus, the rules of evidence, including the rules against the admission of hearsay, are relaxed at probation revocation hearings." *Bailey*, 327 Md. at 698, 612 A.2d 288.

In essence, Md. Rule 4–347 embodies the concept that probation revocation hearings are civil proceedings and, as a result, the "full panoply" of Constitutional rights that would be available to a defendant in a criminal trial are not available when a trial court considers whether an alleged violation of probation has occurred. *Bailey*, 327 Md. at 698, 612 A.2d 288; *Wink*, 317 Md. at 334, 563 A.2d 414. Thus, a defendant's probation may be revoked based on the lower civil standard of a preponderance of the evidence. *Wink*, 317 Md. at 334, 563 A.2d 414. Because the trial court needs to be convinced only by a preponderance of the evidence, and not beyond a reasonable doubt, it is permissible for the lower court to revoke a defendant's probation based on his or her involvement in an alleged crime even though the defendant was previously found not guilty of the same charges at trial. *See Gibson*, 328 Md. at 695, 616 A.2d 877.

The Court of Appeals, however, has recognized a defendant's right to confront witnesses and accusers during a probation revocation hearing pursuant to the Sixth Amendment of the U.S. Constitution in *State v. Fuller*, 308 Md. 547, 520 A.2d 1315 (1987). In *Fuller*, the defendant was convicted of several theft offenses in two separate trials. After the defendant was convicted in the first trial, he received a suspended sentence and was placed on three years' probation. The second conviction resulted in another suspended sentence with five years' probation. Thereafter, while on probation, the defendant was charged with uttering a bad check in an attempt to purchase an automobile from a dealership. The new charges, however, were placed on the stet docket. The defendant appeared before the Circuit Court for Harford County for a consolidated hearing for the revocation of his

probation in each of his two earlier convictions. Over defense counsel's objection, the trial court admitted and considered hearsay evidence from the stetted case, which consisted of testimony from a police officer who had investigated the matter. The police officer testified as to statements made to him by certain employees of the car dealership. Those employees, however, were not present at the hearing. On appeal, the defendant argued that his due process right to confront and cross-examine adverse witnesses was violated as a result of the absence of the live testimony of the car dealership employees.

In its analysis, the Court pointed out that, while a defendant in a probation revocation hearing may not be entitled to all of the protections provided by the U.S. Constitution, the defendant is entitled to "procedural due process" in order to ensure "a fair adjudicative procedure for determining the basis for the revocation of probation." *Id.* at 552, 520 A.2d 1315 (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973)). Analyzing several factors from *Gagnon*, the Court explained that a defendant in a probation revocation hearing has " *'the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation).'* " *Id.*

The Court established a test to determine whether hearsay evidence was admissible despite an objection based on the Confrontation Clause:

> Where a party to a probation revocation hearing objects to the admission of hearsay evidence, the threshold question to be resolved is admissibility under the law of evidence of this State. In making that determination the trial judge should keep in mind that in probation revocation proceedings formal rules of evidence are not applied, and that reasonably reliable hearsay may be received. Where there is a confrontation issue the trial judge must undertake additional analyses. The proffered evidence must be tested against the formal rules of evidence to determine whether it fits any of the exceptions to the hearsay rule. If it does, the evidence and exception should then be reviewed to deter-

mine whether the criteria for satisfaction of the Confrontation Clause have been met. If the criteria have been met, the evidence may be received on that basis, and no specific finding of good cause need be made. If, however, the proffered hearsay evidence runs afoul of rules of evidence applicable to revocation proceedings or the Confrontation Clause, it cannot be admitted unless it satisfies the standard of reasonable reliability and the trial judge makes, and states in the record, a specific finding of good cause.

*Fuller*, 308 Md. at 552–53, 520 A.2d 1315 (citation and footnotes omitted).

Elaborating on the "good cause" requirement, the Court noted that an analysis of U.S. Supreme Court decisions provided "little guidance" but suggested that

the trial court [may] evaluate such factors as: the explanation offered by the State for dispensing with the confrontation, the reliability of the evidence which the State offers in lieu of live testimony, and whether the evidence is offered to prove a probation violation or is merely offered as evidence of such matters as the defendant's general character on probation.

*Id.* at 553–54, n. 5, 520 A.2d 1315.

The Court determined that the defendant was denied his Sixth Amendment right to confront adverse witnesses when the trial court allowed the admission of the hearsay evidence at his probation revocation hearing. *Id.* at 554, 520 A.2d 1315. The Court held that it was error for the trial court to admit the police officer's testimony "[b]ecause the record contain[ed] no finding of good cause for disallowing confrontation, and the excluded evidence [did] not appear to fall within any exception to the hearsay rule that also satisfies the Confrontation Clause." *Id.* Concluding its analysis, the Court applied the harmless error standard. The Court determined that the admission of the police officer's testimony in the probation revocation hearing for defendant's first theft conviction was not harmless beyond a reasonable doubt because of the strong likelihood that the hearsay evidence formed the trial judge's

basis to revoke defendant's probation. *Id.* The admission of the same hearsay evidence by the trial judge presiding over the probation revocation hearing for defendant's second theft conviction, however, was determined to be harmless error, as other evidence regarding a separate and unrelated conviction of uttering bad checks was admitted and properly formed the basis to revoke defendant's probation. *Id.* at 554–55, 520 A.2d 1315.

In *Bailey*, which was decided several years after *Fuller*, the defendant pled guilty to battery and fourth degree sex offense. The trial judge sentenced him to a one-year term of confinement, which was suspended, plus five years' probation. Among the terms of the defendant's probation was a requirement that he enroll and successfully complete a residential treatment program. Pursuant to that requirement, the defendant was admitted to the St. Paul House in Baltimore City. While he was on probation, the defendant was charged by the State with violating a condition of his probation by failing to successfully complete the treatment program and being discharged from St. Paul House. At the probation revocation hearing, the trial judge, over defense counsel's objection, admitted and considered a letter from St. Paul House (Letter) that stated, *inter alia,* that the defendant had been discharged from the program. The signature at the bottom of the Letter was indecipherable and, consequently, the author was never produced at the hearing. The defendant and the State agreed that the statements in the Letter were hearsay.

The Court of Appeals reasoned that, when a trial judge determines whether good cause exists to admit hearsay evidence at a probation revocation hearing, "the most important factor is the reliability of the proffered hearsay evidence." *Bailey,* 327 Md. at 699, 612 A.2d 288. The Court discussed three factors for trial courts to consider when evaluating the reliability of hearsay evidence: 1) "[T]he presence of corroborative evidence"; 2) "[T]he proffered hearsay is an objective fact reported by the declarant or instead contains conclusions which ought to be tested by cross-examination"; and 3) "[T]he source of the proffered hearsay as well as any bias or motive

to fabricate." *Id.* at 701–02, 612 A.2d 288. The three factors, the Court pointed out, were not an exhaustive list and, more-over, "the facts and circumstances of a particular case may undermine the trustworthiness of hearsay evidence that might otherwise enjoy a high degree of reliability." *Id.* at 700, 612 A.2d 288.

Applying the test outlined in *Fuller*, the Court determined that the Letter was sufficiently reliable for it to have been properly admitted with good cause over the defendant's Con-frontation Clause objection. *Id.* at 706, 612 A.2d 288. The Letter was drafted on behalf of St. Paul House, which was a third-party contractor with an obligation to the State with little or no motivation to fabricate or make a false report. *Id.* at 705, 612 A.2d 288. Additionally, defendant's "own tacit admission[ ] to his probation officer" that he had, in fact, absconded from and failed to complete the program was entitled to significant weight to establish the reliability of the Letter. *Id.* at 704, 612 A.2d 288. Noting that the condition requiring the defendant to enroll in and complete a residential treatment program was "straightforward," the Court stated that either the defendant "did or did not successfully complete the program, and the ... [L]etter was admitted for the simple, objective, and uncontroverted fact that [the defendant] did not successfully complete the program." *Id.*

The Court also found persuasive the fact that the trial judge admitted the Letter for the limited purpose of demonstrating that defendant failed to complete the program, while not considering any of the other extraneous, irrelevant informa-tion contained in the Letter regarding defendant's misconduct during his enrollment. *Id.* That the Letter's author was not shown to be unavailable pursuant to the rules of evidence was not dispositive, according to the Court, because it was within the discretion of the trial court to determine whether calling a witness from St. Paul House to testify to an uncontested fact would be inconvenient. *Id.* at 705, 612 A.2d 288. Establishing that the reliability of proffered hearsay evidence in a proba-tion revocation hearing is a "major factor in determining good

cause," the Court held that the trial court did not err in admitting the Letter. *Id.* at 705–06, 612 A.2d 288.

■■■ At oral argument before this Court, the State relied heavily on *Bailey* to support its position. Specifically, the State suggested that the analysis in *Bailey* has undermined the rationale in *Fuller*. We disagree. The Court in *Fuller* established a two-part test, setting forth that, in order to be admissible at a probation revocation hearing, the proffered hearsay evidence must either: 1) fit into any of the exceptions to the hearsay rule or; 2) meet the standard for reasonable reliability with the trial judge specifically finding good cause for dispensing with live testimony. *Fuller*, 308 Md. at 553, 520 A.2d 1315. Far from undermining or modifying the *Fuller* rationale, *Bailey* simply emphasized the importance of a trial judge ensuring that the proffered hearsay evidence is reasonably reliable when he or she considers whether good cause exists to dispense with live testimony. *Bailey*, 327 Md. at 700–03, 612 A.2d 288. In fact, the Court in *Bailey* cited to *Fuller* to support its discussion of the requirement of reasonable reliability. *Bailey,* 327 Md. at 698–98, 612 A.2d 288.

*Bailey* and *Fuller,* however, are factually dissimilar. In *Bailey,* there was no dispute that the defendant had failed to complete the residential treatment program. The Letter was only introduced to support an objective, unchallenged fact. Additionally, the Letter possessed an inherent generic reliability coming from a third-party organization who was obligated to report misconduct to the State. On the other hand, the police officer's testimony in *Fuller* involved multiple levels of hearsay and revolved around a contested issue: whether the defendant had, in fact, violated his probation by uttering bad checks while purchasing an automobile. The Court's determination that defendant had a right to confront the car dealership employees who gave statements to the police officer implicitly acknowledged that the police officer's testimony alone was insufficient to ensure the reliability of those statements.

In our judgment, the instant matter is more factually akin to *Fuller* in that, here, the issue of whether appellant did commit a crime in violation of his probation has been and still is a contested issue. Furthermore, the testimony of Montgomery and Beaty, despite being subject to cross-examination, is not strongly corroborated. Nonetheless, their testimony forms the centerpiece of the State's case and is the only evidence upon which the trial court could have relied to revoke appellant's probation.

While the factual scenarios of *Fuller* and *Bailey* were markedly different, the two-part analysis employed in those two cases is applicable to the case at hand.

■ The State argues that the prior testimony of Montgomery and Beaty was admissible as a firmly established exception to the hearsay rule pursuant to Md. Rule 5–804(b)(1). This assertion is incorrect. Maryland Rule 5–804 is titled "Hearsay exceptions; declarant unavailable" and outlines situations when a witness would be considered unavailable. These include when a witness asserts a privilege not to testify, refuses to testify or is unable to testify due to physical or mental illness, death, or lack of memory. Md. Rule 5–804(a)(1)–(4). Additionally, a witness will be considered "unavailable" if he or she "is absent from the hearing and the proponent of the statement has been unable to procure the declarant's attendance ... by process or other reasonable means." Md. Rule 5–804(a)(5).

The State's reliance on the hearsay exception for former testimony contained in Md. Rule 5–804(b)(1) is misplaced because that hearsay exception is triggered only "if the declarant is unavailable as a witness." In the proceedings below, the State failed to explain why Montgomery and Beaty were "unavailable" or whether the State had undertaken reasonable good faith efforts to locate and procure the witnesses for the probation revocation hearing without success. We are constrained to conclude that, in the absence of any statement pertaining to the unavailability of witnesses Montgomery and Beaty, the transcripts offered into evidence did not meet the

requirements of Md. Rule 5–804(b)(1) and otherwise failed to fall into any other firmly rooted exception to the hearsay rule.

Because the transcripts were inadmissible hearsay, the trial judge was required to determine whether the transcripts were reasonably reliable and whether good cause existed to forego using the live testimony of Montgomery and Beaty. However, the trial judge did not undertake this two-part analysis. We decline to rule on whether the testimony of Montgomery and Beaty at trial was reasonably reliable because we believe that the issue will be more appropriately addressed by the trial judge on remand.

As for the second step of the analysis, there was no finding in the record that demonstrates that there was good cause to dispense with the live testimony of Montgomery and Beaty over appellant's objection to the denial of his right to confrontation. The transcripts from appellant's previous two trials and the exhibits admitted thereto were the only items of evidence offered by the State at appellant's probation revocation hearing. Thus, the testimony elicited at trial from Montgomery and Beaty was central to the State's case that appellant did, in fact, murder Bell and, consequently, violate the conditions of his probation. In other words, the State was not offering their testimony to establish appellant's "general character on probation," but, rather, to conclusively prove that appellant did violate his probation. *Fuller,* 308 Md. at 553, n. 5, 520 A.2d 1315. While the trial testimony was subject to cross-examination, the State failed to explain why Montgomery and Beaty could not personally appear at appellant's probation revocation hearing to offer live testimony.

The whereabouts of Montgomery and Beaty should have, at the very least, been proffered to the trial court to support an argument that they were unavailable and there was good cause to dispense with their live testimony. Instead, the State simply argued that Md. Rule 4–347 permitted the use of former testimony, to which the trial judge responded that he would not consider any testimony that was not subject to cross-examination. In sum, the State failed to demonstrate

that good cause existed. Most important, our review of the record shows that the trial judge failed to make a specific finding that good cause existed to dispense with the live testimony of Montgomery and Beaty pursuant to the requirements of *Fuller* and *Bailey*. Additionally, we are not persuaded that the trial judge's sole reliance on the hearsay evidence to support the revocation of appellant's probation was harmless beyond a reasonable doubt. *See Fuller,* 308 Md. at 554, 520 A.2d 1315. We hold that the trial judge erred in admitting and considering the trial transcripts of Montgomery and Beaty in the absence of a determination that the transcripts were reasonably reliable and a specific finding of good cause to dispense with live testimony stated in the record.

**JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY VACATED; CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**COSTS TO BE PAID BY PRINCE GEORGE'S COUNTY.**