**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Anthony PRATT, Defendant–Appellant.**

**No. 94–1345.**

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 25, 1995.

Decided April 13, 1995.

Stephen A. Ingraham, Asst. U.S. Atty. (argued), Office of U.S. Atty., Milwaukee, WI, for U.S.

Allen E. Shoenberger, Debran Rowland, Law Student (argued), Chicago, IL, for defendant-appellant.

Before PELL, FLAUM, and MANION, Circuit Judges.

MANION, Circuit Judge.

In 1993 Anthony Pratt pleaded guilty to two counts of bank fraud, 18 U.S.C. §§ 2, 1344, and was sentenced to 38 months of imprisonment to be followed by three years of supervised release. After he was released from custody,[1] Pratt was arrested for mail theft. The district court revoked Pratt's supervised release and sentenced him to 24 months of imprisonment. Pratt appeals the revocation, alleging that he was denied the effective assistance of counsel because counsel failed to call adverse witnesses and to present a valid defense during the revocation hearing. We affirm.

## I. Background

In August 1993, Pratt was placed on supervised release after serving a 38 month prison term for his bank fraud convictions. Several months later, Pratt was arrested by postal inspectors for stealing mail in Wauwatosa, Wisconsin. Pratt's probation officer petitioned the district court to revoke Pratt's supervised release, stating that Pratt had been arrested on a federal offense, which was a "Grade B" violation. The petition also charged other violations of the conditions of supervised release, which were all "Grade C" violations. They included failing to pay restitution, failing to report to his probation officer as directed, failing to submit to random urinalysis tests on five occasions, testing positive for marijuana and cocaine, and failing to comply with drug abuse treatment and attending only one drug counseling session.

A preliminary hearing was held in January 1994. Pratt was represented by the same appointed counsel who had represented him at the underlying bank fraud case. At the hearing, Pratt's probation officer, Lisa M. Kohn, was called to testify and was subject to cross-examination. Based upon Kohn's testimony, Magistrate Judge Goodstein found that there was probable cause that Pratt had violated some of the conditions of his supervised release.

The district court held a final revocation hearing in February 1994. Probation Officer Kohn did not testify again, although she was in attendance and had submitted a revocation hearing report to which counsel made several objections. For instance, counsel objected to Kohn's statement that Pratt had attended only one counseling session. With the court's permission, Kohn responded that Pratt's first appearance was merely to schedule a date for the actual counseling session. Counsel also objected to Kohn's statement that Pratt was reluctant to maintain employment. Counsel explained that Pratt was gainfully employed at the time and that there had been an on-going conflict between Pratt and Kohn concerning whether Pratt should attend school full-time and whether he should have full-time employment.

The government called only one witness, Postal Inspector James Gill. Over counsel's hearsay objection, the district court allowed Gill to testify as to Pratt's mail theft, possession of stolen mail, as well as aiding and abetting the passing of stolen checks. According to Gill, a Kathryn Manschot had fraudulently cashed two checks at the Badger Bank in Milwaukee, Wisconsin on December 21, 1993, and in one of the photographs produced by Badger Bank's surveillance camera during the transaction, Pratt was standing next to Manschot. The photographs were introduced into evidence. Gill stated that he was told by bank employees that when asked if he needed help, Pratt approached the teller window and asked for change.

Gill further testified that the day after the bank fraud incident, a citizen reported that a woman had come onto her porch where outgoing mail had been placed. Based on the citizen's description of the woman and her car (in which a man was waiting), the police

---

1. Pratt was credited 28 months and 11 days of time served on the sentence.

arrested Pratt and Manschot. Pratt was wearing the same coat he wore the day before at Badger Bank. According to Gill, at the time of the arrest, the police found in Manschot's car several pieces of undelivered mail, including mail of the complaining citizen, and blank checks from the two accounts Manschot had used to cash checks at Badger Bank. Neither bank account belonged to Pratt or Manschot. The police also found two pieces of undelivered mail, including one from a bank, on Pratt's person. Photographs of those two pieces of stolen mail, the blank checks found in Manschot's car, and the checks fraudulently cashed at Badger Bank were introduced into evidence. Also introduced into evidence were the statements of the intended recipients of the stolen mail.

During the hearing, counsel conceded the existence of the "Grade C" violations, with the exception of failure to pay restitution. Counsel argued, however, that the evidence was insufficient to prove the "Grade B" violations. Specifically, counsel argued that although two pieces of undelivered and unopened mail were found inside of Pratt's front coat pocket, they could have been "stuffed" there by Manschot while Pratt was sleeping. According to counsel, had Pratt really been responsible for the stolen mail, then he would have been furtive about them and placed them in an inside or side pocket. With respect to the bank fraud incident, counsel argued that there was no evidence that Pratt was directly involved in any criminal activity—he and Manschot were simply at the same place at the same time. Counsel also suggested that Manschot, knowing Pratt's past criminal history, may have tried to set Pratt up so that she could point the finger at him and divert criminal responsibility away from herself. Finally, counsel stated that he had attempted to locate Manschot but was unsuccessful. Counsel did not call any witnesses on Pratt's behalf.

The district court found that the evidence was "more than just by a preponderance that this defendant has what appears to be two grade B violations in the mail theft charge and the passing of—aiding and abetting in the passing of those checks." The court further noted that there was no evidence controverting the fact that Pratt had committed the "Grade C" violations listed in the probation officer's report. The district court then sentenced Pratt to 24 months of imprisonment.

## II. Analysis

### A. Ineffective Assistance of Counsel

Pratt argues that he was denied the effective assistance of counsel because counsel failed to call any adverse witnesses or to present any defense on his behalf during the revocation hearing. Particularly, Pratt argues that counsel (1) failed to demand that the government show cause why it was not producing the live witnesses, (2) failed to call Probation Officer Kohn to investigate her motive in initiating the revocation proceeding despite counsel's knowledge that there were conflicts between Kohn and Pratt concerning the conditions of release, (3) failed to controvert the probation officer's report, and (4) failed to cross-examine Kohn or contact the laboratory or hospital where Pratt's drug tests were administered to ascertain the actual test results.

■ This court has often cautioned that ineffective assistance of counsel claims are ordinarily best brought first in the district court because evidence outside of the record will ordinarily be required to demonstrate the deficiency in counsel's performance. *Guinan v. United States*, 6 F.3d 468, 471 (7th Cir.1993); *see also United States v. Fish*, 34 F.3d 488, 491 n. 1 (7th Cir.1994). However, this court will consider the ineffective assistance claim if the challenge to counsel's assistance is sufficiently clear-cut and can be conclusively determined from the record.[2] *Id.*; *United States v. Taglia*, 922 F.2d 413, 418 (7th Cir.), *cert. denied*, 500 U.S. 927, 111

2. Indeed, this court has said that if nothing could be gained through evidentiary inquiry that is not already contained in the record, the defendant is required to raise the claim on direct appeal or forfeit it. *Guinan*, 6 F.3d at 471; *United States v.*

*Taglia*, 922 F.2d 413, 418 (7th Cir.), *cert. denied*, 500 U.S. 927, 111 S.Ct. 2040, 114 L.Ed.2d 125 (1991); *see also Dugan v. United States*, 18 F.3d 460, 464 (7th Cir.1994).

S.Ct. 2040, 114 L.Ed.2d 125 (1991). Pratt's case presents such a situation.

■ In order to succeed on the ineffective assistance of counsel claim, Pratt must show that his counsel's performance was deficient and that his deficient performance so prejudiced his defense as to render the result of his revocation proceeding "fundamentally unfair or unreliable." *Lockhart v. Fretwell,* — U.S. —, — –—, 113 S.Ct. 838, 842–43, 122 L.Ed.2d 180 (1993); *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *United States v. Kozinski,* 16 F.3d 795, 813 (7th Cir.1994) (citing *Strickland,* 466 U.S. at 698, 104 S.Ct. at 2070). This court will address the prejudice prong of the test first if it will resolve the case more expeditiously. *See Barker v. United States,* 7 F.3d 629, 633 (7th Cir.1993).

■ Pratt's opening brief focused heavily on the argument that counsel's failure to call and cross-examine adverse witnesses or to demand the government to show cause for not producing those witnesses violated his Sixth Amendment right to confrontation. His reply brief, however, shifted the focus to arguing that counsel's ineffectiveness violated his due process rights. It is true that under *Morrissey v. Brewer,* 408 U.S. 471, 489, 92 S.Ct. 2593, 2604, 33 L.Ed.2d 484 (1972), a defendant has a due process right to confront and cross-examine adverse witnesses at a revocation hearing (unless good cause is shown for not allowing confrontation). *See also Gagnon v. Scarpelli,* 411 U.S. 778, 786, 93 S.Ct. 1756, 1761–62, 36 L.Ed.2d 656 (1973); *Prellwitz v. Berg,* 578 F.2d 190, 192 (7th Cir.1978) (parole revocation). However, in the context of an ineffective assistance claim, the key inquiry is whether counsel's alleged errors have rendered the defendant's revocation proceeding "fundamentally unfair or unreliable." *Lockhart,* — U.S. at — –—, 113 S.Ct. at 842–43.

■ Pratt has failed to establish that counsel's performance prejudiced him. In arguing that he was denied his confrontation right, Pratt suggests that the use of Postal Inspector Gill's hearsay evidence instead of the testimony of the adverse witnesses affected the outcome of his revocation hearing. Pratt's claim fails for a number of reasons. First, a revocation hearing is not a part of a criminal prosecution and the full panoply of rights due a defendant under the Federal Rules of Evidence does not apply. *Morrissey,* 408 U.S. at 480, 92 S.Ct. at 2600. Thus, hearsay testimony is admissible so long as it is reliable. *See* Fed.R.Evid. 1101(d)(3); *United States v. Thomas,* 934 F.2d 840, 846 (7th Cir.1991) (parole revocation); *United States v. Verbeke,* 853 F.2d 537, 538–39 (7th Cir.1988) (parole revocation). The district court could find that Inspector Gill's hearsay testimony was reliable because it was corroborated by police reports, written statements of the victims, surveillance photographs produced by Badger Bank's surveillance camera, and photographs of the blank checks found in Manschot's car, the undelivered mail found on Pratt's person, and the checks fraudulently cashed by Manschot at Badger Bank. Because the hearsay evidence satisfied the reliability requirement, the government could have shown good cause why the witnesses need not be present.

Second, given the relaxed standard of proof of "preponderance of the evidence" in revocation hearings, 18 U.S.C. § 3583(e)(3); *United States v. Goad,* 44 F.3d 580, 584–85 (7th Cir.1995), the district court could find from the above evidence that Pratt had committed mail theft and had aided and abetted the passing of stolen checks in violation of the conditions of his supervised release. Thus, even if counsel had called the adverse witnesses, it would not have affected the outcome of Pratt's revocation hearing. Moreover, counsel's decision not to call the adverse witnesses may have been a tactical decision as their testimony based on personal knowledge would be more damaging to Pratt's case. *See United States v. Limehouse,* 950 F.2d 501, 504 (7th Cir.1991) ("[t]rial tactics are not subject to question by a reviewing court in deciding an ineffective assistance claim."). For instance, had Manschot testified, she could have defeated counsel's theory that she had set Pratt up. Similarly, counsel may have decided that nothing could be gained from cross-examining Proba-

tion Officer Kohn because Kohn could have emphasized how Pratt had failed to comply with the conditions of his supervised release. This is true especially because Kohn had already been cross-examined at the preliminary hearing and her report was subject to Pratt and counsel's review prior to the hearing. More importantly, even if counsel could have established Kohn's alleged bias against Pratt on cross-examination, it still does not change the fact that there is sufficient evidence against Pratt regarding his Grade B violations.

In any event, the record indicates that counsel performed adequately. Pratt's argument that counsel failed to present any defense and took a gamble by pleading for leniency, *see United States ex rel. Barnard v. Lane,* 819 F.2d 798, 803 (7th Cir.1987), is unavailing. During the hearing, counsel attempted to show that Pratt did not knowingly possess the stolen mail and that Pratt may have been framed by Manschot. For example, in cross-examining Postal Inspector Gill, counsel tried to establish that Pratt was asleep when the police approached the car to arrest him and that no fingerprints were found on the stolen mail. Counsel also elicited testimony that the stolen mail was "stuffed inside the front of Pratt's coat," and argued that the mail may have been placed there by Manschot. With regard to the bank fraud incident, counsel argued that Pratt was at Badger Bank for innocent reasons and that Pratt may not have been aware of Manschot's criminal activity. Although counsel was unsuccessful, his conduct did not fall below the range of competent professional judgments in light of the evidence against Pratt.

■ Pratt points to many alleged failings by counsel with respect to the Grade C violations. He faults counsel for failing to controvert the probation officer's revocation hearing report and for conceding the existence of his Grade C violations. The issue of whether counsel had performed adequately in handling Pratt's Grade C violations is insignificant because Pratt's guideline range upon

revocation of supervised release would have been the same had there been no Grade C violations. As discussed above, there was sufficient evidence to support the district court's finding that Pratt had committed two Grade B violations. Under § 7B1.4(a) of the sentencing guidelines, Pratt's guideline range would be 21 to 27 months for any Grade B violation.[3] The range is the same whether there are more than one Grade B violation or whether the Grade B violation is coupled with Grade C violations. Because Pratt would have received the same guideline range regardless of whether the Grade C violations were proven, he cannot establish that counsel's performance with respect to the Grade C violations has prejudiced him. Accordingly, Pratt's ineffective assistance claim must fail.

## B. Due Process

■ Pratt insisted at oral argument that he was really raising a due process claim with respect to the government's use of hearsay evidence. The Supreme Court has made it clear that a defendant is afforded only the minimum requirements of due process at a revocation hearing and that the nature of such a proceeding is informal. *Morrissey,* 408 U.S. at 489, 92 S.Ct. at 2604. *See also United States v. Martin,* 984 F.2d 308, 310–11 (9th Cir.1993); *Prellwitz,* 578 F.2d at 192. Indeed, the Court has instructed that "the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial." *Morrissey,* 408 U.S. at 489, 92 S.Ct. at 2604; *Gagnon,* 411 U.S. at 782 n. 5, 93 S.Ct. at 1760 n. 5 (Court does not "intend to prohibit use where appropriate of the conventional substitutes for live testimony, including affidavits, depositions, and documentary evidence"). Thus, although a defendant has a due process right to confront adverse witnesses in a revocation hearing, *Morrissey,* 408 U.S. at 489, 92 S.Ct. at 2604, that right is not absolute; reliable hearsay evidence may be admitted to substi-

---

**3.** The criminal history category for purposes of determining the term of imprisonment upon revocation is the same as the category applicable at the time the defendant originally was sentenced to a term of supervision. U.S.S.G. § 7B1.4(a), p.s.

tute live testimony.[4] *Prellwitz,* 578 F.2d at 191–92 (claim of violation of due process right to confront adverse witnesses at the revocation hearing rejected where the hearsay evidence bore indicia of reliability). *See also* Fed.R.Evid. 1101(d)(3).

■ Pratt's revocation hearing satisfied the minimum due process requirements. Pratt complains that counsel should have contacted the hospital where his urine tests were performed to ascertain the results of the tests, or at least cross-examined Probation Officer Kohn on that matter. Assuming Pratt is arguing that the urine test results were unreliable, his due process claim fails. As discussed before, although Probation Officer Kohn did not testify at the final revocation hearing, she was subject to cross-examination by counsel at the preliminary hearing, and the results of the urine tests were outlined in her revocation hearing report. Kohn was also present at the revocation hearing to answer questions addressed by the court. Pratt and his counsel both stated at the hearing that they had examined the report, yet no challenge was made as to the reliability of the test results. *See Thomas,* 934 F.2d at 846 n. 12 (where defendant failed to challenge the reliability of the allegations contained in the probation officer's report, he has waived the right to make that challenge). Nor was there any indication that the results were unreliable. Thus, the district court could consider Kohn's report of the test results to be reliable. *See United States v. Kindred,* 918 F.2d 485, 486 (5th Cir.1990) (admission of urinalysis report through the testimony of probation officer does not violate right to confrontation); *United States v.*

*Penn,* 721 F.2d 762, 766 (11th Cir.1983) (same).

■ Similarly, there was no due process violation as to the admission of Postal Inspector Gill's hearsay testimony. As an initial matter, other than making a general hearsay objection, Pratt never requested the presence of the adverse witnesses, nor did he attempt to contest the reliability of the hearsay testimony. Instead, he argued that the evidence did not amount to a knowing possession of the stolen mail or the aiding and abetting the commission of bank fraud. In any event, Gill's testimony possesses sufficient indicia of reliability. The testimony was used as a substitute for the testimony of the arresting officer, the victims of Pratt's mail theft, and the employees at Badger Bank. As discussed before, it was corroborated by police reports, written statements of the victims, surveillance photographs produced by Badger Bank's surveillance camera, and photographs of the blank checks found in Manschot's car, the undelivered mail found on Pratt's person, and the checks fraudulently cashed by Manschot at Badger Bank, all of which fall within the range of the "conventional substitutes for live testimony." *Gagnon,* 411 U.S. at 783, 93 S.Ct. at 1760. Additionally, Pratt was permitted wide latitude in cross-examining Inspector Gill, and Gill's testimony was not discredited by any physical evidence. There is no due process violation. The judgment of the district court is

AFFIRMED.

■

---

4. Indeed, in cases involving the *Morrissey* right to confrontation, some courts have employed a process of balancing the defendant's right to confrontation against the government's reasons for denying it. *See, e.g., United States v. O'Meara,* 33 F.3d 20, 21 (8th Cir.1994) (per curiam) (judgment revoking supervised release vacated where district court failed to engage in the required balancing before admitting the challenged hearsay evidence); *United States v. Frazier,* 26 F.3d 110, 114 (11th Cir.1994); *United States v. Martin,* 984 F.2d 308, 310 (9th Cir.1993). The requirement of balancing, however, generally involves an initial request by the defendant to cross-examine the adverse witnesses, *see, e.g., Belk v. Purkett,*

15 F.3d 803, 809 (8th Cir.1994), which is not the case here. In any event, this court has never applied such a per se rule, but has emphasized the flexible nature of revocation proceedings. *See Prellwitz v. Berg,* 578 F.2d 190, 192 (7th Cir.1978) (stating that "forcing the state to show good cause for not producing the hearsay declarant would unwisely extend the limited due process rights of a probationer at the revocation hearing" and would be contrary to the informal nature of those proceedings). Where the hearsay evidence is reliable, this court has been reluctant to find a due process violation. *See, e.g., Thomas,* 934 F.2d at 845–46; *Verbeke,* 853 F.2d at 538–39.