In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 05-1884

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

LAMOND D. KELLEY,

*Defendant-Appellant.*

---

Appeal from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 01 CR 37—**James T. Moody**, *Judge.*

---

ARGUED SEPTEMBER 22, 2005—DECIDED MAY 2, 2006

---

Before EASTERBROOK, EVANS, and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* Following a final revocation hearing, the district court found Lamond Kelley guilty of battery, aggravated assault, and unlawful use of a weapon—all Grade A violations[1] of the conditions of his supervised release. These Grade A violations combined with Kelley's criminal history category of IV to produce an advisory guidelines sentencing range of 24-30 months' incarceration, U.S.S.G. § 7B1.4(a), which was limited to

---

[1] Grade A violations of conditions of supervised release are the most serious kind and produce the longest advisory sentencing ranges. U.S.S.G. § 7B1.4(a).

24 months by operation of 18 U.S.C. § 3583(e)(3). The district court revoked Kelley's supervised release and sentenced him to 24 months' imprisonment. Had the court held Kelley responsible only for the lesser Grade B and C violations that he admitted, his advisory sentencing range would have been 12-18 months.

On appeal, Kelley argues the district court could not have found him guilty of the Grade A violations without the hearsay-laden testimony and police report of the investigating officer. He argues that the court's consideration of that hearsay—over his timely objection—violated his Sixth Amendment right of confrontation as recently construed in *Crawford v. Washington*, 541 U.S. 36 (2004), and his more limited due process right of confrontation as applicable to revocation proceedings under *Morrissey v. Brewer*, 408 U.S. 471 (1972).

We affirm. Supervised release revocation hearings are not criminal prosecutions, so the Sixth Amendment right of confrontation and *Crawford* do not apply. Kelley's due process rights were not violated because the hearsay evidence at issue was substantially reliable and its admission did not undermine the fundamental fairness of the revocation hearing.

## I. Background

Lamond Kelley pleaded guilty to felony escape and was sentenced to four months' imprisonment and four months of home detention, followed by three years of supervised release. On August 25, 2003—during Kelley's term of supervised release—Officer Joseph Morency of the Burnham, Illinois police department responded to a dispatch about "a man with a gun." Officer Morency was the government's only witness at Kelley's supervised release revocation hearing and testified to what occurred when he responded to the dispatch. The district court permitted

Officer Morency's testimony and also admitted his initial police report, over Kelley's hearsay, Fifth Amendment, and Sixth Amendment objections.

Officer Morency's testimony and police report established the following: When the officer arrived at the scene, he saw Kelley and Kelley's brother Ronald, and arrested both of them. Officer Morency then spoke with Daniel and Terra Patterson, brother and sister, who were also at the scene; the Pattersons said they had been in an altercation with Kelley and his brother, and that Kelley had punched them both in the face with closed fists. The Pattersons said Kelley's brother then started punching them, and Kelley produced a black, .22-caliber rifle from the trunk of his car, which was parked nearby. Officer Morency noted that Daniel Patterson had suffered a broken tooth.

Officer Morency asked Kelley if he could look inside the trunk of his car, and Kelley responded, "I don't care[,] I don't have the keys." The trunk lock was punched out, so Officer Morency opened the trunk with a screwdriver later at the police station. Inside the trunk he found a black, .22-caliber, Marlin semiautomatic rifle loaded with eight .22-caliber rounds; he also found a black rifle case containing numerous .22-caliber rounds. The vehicle was registered to Kelley.

Officer Morency had no personal knowledge regarding Kelley's alleged assault, battery, or display of the rifle. He testified to the Pattersons' statements, his personal observation that Daniel Patterson had suffered a broken tooth, and his discovery of the rifle and ammunition in the trunk of Kelley's car.

The district judge found Kelley had committed the Grade A violations of battery, aggravated assault, and unlawful use of a weapon as alleged in the Summary Report of Supervised Release Violations. The judge did not make explicit findings as to the reliability of the hearsay evidence

or whether the government had shown good cause for not producing hearsay declarants Daniel and Terra Patterson as live witnesses. Kelley admitted to several Grade B and C violations that would have supported revocation and an advisory sentencing range of 12-18 months; with the Grade A violations, however, the range was 24-30 months. The district court revoked Kelley's supervised release and sentenced him to 24 months' imprisonment. *See* 18 U.S.C. § 3583(e)(3) (limiting imprisonment after revocation of supervised release to two years where the underlying crime is a Class C or D felony; Kelley's underlying crime of escape is a Class D felony).

## II. Discussion

### A. Sixth Amendment—*Crawford v. Washington*

Kelley asks us to hold that the admission of Daniel and Terra Patterson's hearsay statements at his revocation hearing violated his Sixth Amendment right to be confronted with the witnesses against him. But by its own terms, the Sixth Amendment applies only in "criminal prosecutions," U.S. CONST. amend. VI, and the Supreme Court long ago held that revocation hearings are not criminal prosecutions for purposes of the Sixth Amendment. *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) ("Probation revocation, like parole revocation, is not a stage of a criminal prosecution."); *Morrissey*, 408 U.S. at 480 ("revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations"). *Morrissey* held that due process requires a flexible notice-and-hearing procedure—including a limited right of confrontation—in the revocation context. *Morrissey*, 408 U.S. at 488-90. *Morrissey* and *Gagnon* involved parole and probation revocations, respectively, but their holdings apply to supervised release revocations as well. *See, e.g.*, *United*

*States v. Colt*, 126 F.3d 981, 986 (7th Cir. 1996) (revocation of supervised release was merely a modification of defendant's original sentence); *United States v. Pratt*, 52 F.3d 671, 675 (7th Cir. 1995) ("a revocation hearing is not part of a criminal prosecution") (citing *Morrissey*, 408 U.S. at 480).

Kelley argues that the Supreme Court's decision in *Crawford v. Washington*, 541 U.S. 36 (2004), undermines *Morrissey* and *Gagnon* and makes the Sixth Amendment's Confrontation Clause applicable at revocation hearings. He suggests that when the *Morrissey* Court identified a "right to confront and cross-examine adverse witnesses" as one of the "minimum requirements of due process" at state parole revocation hearings, *Morrissey*, 408 U.S. at 489, it had in mind a confrontation right rooted in the Sixth Amendment and applied to the states by the Fourteenth Amendment's Due Process Clause. Kelley thus invites us now to apply the Sixth Amendment to revocation hearings and conclude that *Crawford*[2] prohibits admission of testimonial hearsay of the sort on which the district court relied to find him guilty of Grade A supervised release violations.

We decline this invitation. *Crawford* changed nothing with respect to revocation hearings. *Morrissey* held unequivocally that revocation hearings are not "criminal prosecutions" for purposes of the Sixth Amendment, so the "full panoply of rights due a defendant in such a proceeding" does not apply. *Morrissey*, 408 U.S. at 480. This "full panoply of rights" is precisely the list of protections found in the Sixth Amendment, which by its terms applies only to criminal prosecutions. U.S. CONST. amend. VI. Because

---

[2] *Crawford* held that the Sixth Amendment generally prohibits the admission of testimonial hearsay at criminal trials unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness. *Crawford v. Washington*, 541 U.S. 36, 68 (2004).

revocation proceedings are not criminal prosecutions, Sixth Amendment rights are not implicated. *Morrissey*, 408 U.S. at 480. *Morrissey*'s articulation of a limited confrontation right in revocation proceedings was explicitly grounded in considerations of due process, not the Sixth Amendment. *Id.* at 485-90.

*Crawford* dealt with the introduction of testimonial hearsay at a criminal trial—a "criminal prosecution[ ]," as that term is used in the Sixth Amendment. The Supreme Court did not mention revocation hearings or *Morrissey* in *Crawford*; nothing in the case can be read to suggest that *Morrissey* and *Gagnon* have been implicitly altered or that revocation proceedings should now be characterized as "criminal prosecutions" within the meaning of the Sixth Amendment. Several other circuits have declined to extend *Crawford* to revocation proceedings. *See, e.g.*, *United States v. Rondeau*, 430 F.3d 44, 47-48 (1st Cir. 2005); *United States v. Aspinall*, 389 F.3d 332, 342-43 (2d Cir. 2004); *United States v. Kirby*, 418 F.3d 621, 627 (6th Cir. 2005); *United States v. Martin*, 382 F.3d 840, 844 n.4 (8th Cir. 2004); *United States v. Hall*, 419 F.3d 980, 985-86 (9th Cir. 2005); *Ash v. Reilly*, 431 F.3d 826, 829-30 (D.C. Cir. 2005).[3] We now join them. Because supervised release revocation hearings are not criminal prosecutions for purposes of the Sixth Amendment, *Crawford* does not apply.

## B. Fifth Amendment—Due Process

Kelley also argues that the admission of the Pattersons' hearsay statements at his revocation hearing violated his more limited due process right of confrontation. *Morrissey*

---

[3] The only contrary authority cited by Kelley was a district court opinion that has since been reversed by the D.C. Circuit in *Ash v. Reilly*, 431 F.3d 826, 829-30 (D.C. Cir. 2005).

held that due process requires an informal notice-and-hearing procedure prior to parole revocation, and that this includes (among other things) the "right to confront and cross-examine witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation)[.]" *Morrissey*, 408 U.S. at 489. Kelley argues that the district court violated his due process rights under *Morrissey* by failing to find good cause to deny confrontation of Daniel and Terra Patterson.

The government responded to Kelley's objection below by simply asserting that all hearsay is admissible at revocation hearings and the court could give the Pattersons' hearsay statements whatever weight it wanted. The district court apparently agreed and did not make an explicit finding of good cause. This was an incorrect view of the law in this circuit; we have interpreted *Morrissey* and *Gagnon* to permit the admission of *reliable* hearsay at revocation hearings without a specific showing of good cause, *Pratt*, 52 F.3d at 675; *Egerstaffer v. Israel*, 726 F.2d 1231, 1234 (7th Cir. 1984); *Prellwitz v. Berg*, 578 F.2d 190, 192 (7th Cir. 1978), and the district court did not evaluate the reliability of the Pattersons' hearsay statements. Any error in this regard was harmless, however, because the hearsay in Officer Morency's testimony and police report bore substantial indicia of reliability so that its admission was not fundamentally unfair.

Officer Morency was dispatched to the scene on a report of a "man with a gun," and his personal observations and investigation corroborated the Pattersons' version of events. The parties to the altercation were still at the scene, and the officer noted that Daniel Patterson had sustained a mouth injury, suffering a broken tooth. Kelley's car (later confirmed to be registered to him) was parked nearby, and in the trunk of that car, just as the Pattersons had indicated, was a black, .22-caliber rifle, a rifle case, and numerous rounds of .22-caliber ammunition. The physical evi-

dence and the officer's personal observations and investigation corroborated the Pattersons' accusations that Kelley punched them in the face and confronted them with a rifle that he produced from the trunk of his car.

Where hearsay evidence sought to be admitted at a revocation hearing "bears substantial guarantees of trustworthiness, then the need to show good cause vanishes." *Egerstaffer*, 726 F.2d at 1234; *see also Pratt*, 52 F.3d at 675; *Prellwitz*, 578 F.2d at 192. This circuit essentially treats a finding of "substantial trustworthiness" as the equivalent of a good cause finding for the admission of hearsay in the revocation context. Kelley makes a one-sentence fallback argument in his reply brief suggesting that this circuit's interpretation of *Morrissey*'s "good cause" requirement is incorrect and that we should henceforward require an explicit finding of good cause before the admission of hearsay in a revocation hearing. Kelley's argument is both too late and too cursory to merit serious consideration in this case.[4] *United States v. Adamson*, 441 F.3d 513, 521 n.2

---

[4] We are aware that some circuits interpret *Morrissey* to require an explicit finding of good cause before admission of hearsay at a revocation hearing, and others have adopted a balancing test that requires the court to weigh the confrontation interest of the parolee/probationer against the interests of the government. *E.g.*, *United States v. Rondeau*, 430 F.3d 44, 47-48 (1st Cir. 2005) (hearsay was admissible at revocation hearing only because court determined the hearsay was reliable, and that the government had a good reason not to produce declarants); *Barnes v. Johnson*, 184 F.3d 451, 454 (5th Cir. 1999) ("[T]o fall within the good-cause exception to the right of confrontation at a parole revocation hearing[,] the hearing officer must make an explicit, specific finding of good cause and state the reasons for that finding. . . . The hearing officer must weigh the parolee's interest in confronting the witness with the government's interest in denying the parolee that right."); *United States v. Martin*, 382 F.3d 840, 844

(continued...)

(7th Cir. 2006) ("Arguments made for the first time in a reply brief are waived . . . and in any event the argument is not developed.") (internal citation omitted). In any event, *Morrissey* emphasized the flexible and informal nature of revocation procedures, 408 U.S. at 489-90, and *Gagnon* clarified that the Court did not intend *Morrissey* "to prohibit use where appropriate of the conventional substitutes for live testimony, including affidavits, depositions, and documentary evidence." *Gagnon*, 411 U.S. at 782 n.5.

Even in light of the flexible nature of revocation hearings, however, the district court ideally should have explained on the record why the hearsay was reliable and why that reliability was substantial enough to supply good cause for not producing the Pattersons as live witnesses. Still, we have not strictly required district courts to make explicit reliability and good cause findings. *See Pratt*, 52 F.3d at 675

---

[4] (...continued)
(8th Cir. 2004) ("[T]o comport with *Morrissey v. Brewer*, the district court must balance the probationer's right to confront a witness against the grounds asserted by the government for not requiring confrontation.") (quotation marks and citation omitted); *United States v. Hall*, 419 F.3d 980, 986 (9th Cir. 2005) ("To determine whether the admission of hearsay evidence violates the releasee's right to confrontation in a particular case, the court must weigh the releasee's interest in his constitutionally guaranteed right to confrontation against the Government's good cause for denying it.") (quotation and citation omitted); *United States v. Frazier*, 26 F.3d 110, 114 (11th Cir. 1994) (in deciding whether to admit hearsay testimony at a revocation hearing, "the court must balance the defendant's right to confront adverse witnesses against the grounds asserted by the government for denying confrontation"). Other circuits follow our approach and do not require an explicit good cause finding or a balancing test. *See United States v. McCallum*, 677 F.2d 1024, 1025-26 (4th Cir. 1982); *Kell v. United States Parole Comm'n*, 26 F.3d 1016, 1019-20 (10th Cir. 1994).

(affirming revocation based on hearsay evidence because the "district court *could* find that [the] hearsay testimony was reliable" and "the government *could* have shown good cause why the witnesses need not be present") (emphasis added). The record here is sufficiently clear for us to conclude that the Pattersons' hearsay was substantially trustworthy so as to establish good cause for not producing them as live witnesses. In light of the officer's independent corroboration, the admission of the Pattersons' hearsay statements did not undermine the fundamental fairness of Kelley's revocation hearing and did not violate his right to due process. *See Pratt*, 52 F.3d at 676-77.

AFFIRMED.

A true Copy:

      Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*