**George REYES, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 01A02–0510–CR–976.**

Court of Appeals of Indiana.

Sept. 21, 2006.

---

Susan K. Carpenter, Public Defender of Indiana, J. Michael Sauer, Deputy Defend-

er of Indiana, Indianapolis, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, George P. Sherman, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MATHIAS, Judge.

George Reyes's ("Reyes") probation was revoked in Adams Circuit Court after he tested positive for marijuana and cocaine use. Reyes was ordered to serve his previously suspended 2070–day sentence. Reyes appeals and raises two issues, which we restate as:

I. Whether the trial court abused its discretion when it admitted an affidavit into evidence where Reyes was denied the opportunity to confront and cross-examine the affiant; and,

II. Whether the evidence is sufficient to support the revocation of Reyes's suspended sentence.

Concluding that good cause existed for denying Reyes's limited right to confrontation and that the evidence is sufficient to support his probation revocation, we affirm.

### Facts and Procedural History

On May 15, 1998, Reyes was found guilty of Class B felony aggravated battery. He was sentenced to serve ten years with six years suspended, and ten years probation. As a condition of his probation, Reyes was to refrain from the use of alcoholic beverages, and all forms of drugs and prohibited substances, unless prescribed by a physician. Prior to the proceedings relevant to this appeal, Reyes violated his probation on three occasions either by consuming alcoholic beverages or using marijuana.

On January 18, 2005, Reyes submitted a urine sample that tested positive for marijuana use. On February 8, 2005, the State filed a "Violation of Probation Petition." A hearing was held on the State's petition on August 5, 2005. Reyes admitted to the allegation contained in the State's petition, and therefore, the trial court concluded that Reyes violated the terms of his probation by testing positive for marijuana. Appellant's App. p. 143. The court then issued the following order:

> The Court revokes the entirety of the defendant's remaining 2,070 days of suspended sentence to be served at the Indiana Department of Correction, but the Court will suspended [sic] all but 1,035 days if the defendant meets the following requirement. The Defendant is to undergo [ ] urinalysis testing this date. The defendant is further to be retested on August 15, 2005. If the defendant test [sic] positive for any new drugs or his test comes back higher than the first testing, that was taken on August 5, 2005, the defendant shall serve his entire suspended sentence.

*Id.*

On August 23, 2005, Reyes's probation officer reported that Reyes tested positive for cocaine use as a result of the urine samples taken on August 5 and 16, 2005. A hearing was then held on September 8, 2005. At the hearing, the State introduced into evidence the urinalysis test results and the affidavits of Jeff Retz ("Retz"), the scientific director at Witham Memorial Hospital Toxicology Laboratory. With regard to both urinalysis tests, Retz concluded that Reyes had used cocaine within "72 hours prior to collection." Appellant's App. pp. 155, 162. Retz's affidavits were admitted over Reyes's objection. The trial court then issued an amended revocation order and concluded,

The Court finds that the defendant consumed cocaine between the period of 8–5–2005 and 8–15–2005 wherein defendant sought conditional liberty from starting his sentence under the agreement that if he did not test positive for drug usage that the defendant would only be ordered to serve 1035 days of the remaining 2070 days of defendant's suspended sentence. Inasmuch as the defendant has tested positive for drug usage the Court now amends its order of August 5, 2005 and revokes the entire 2,070 days of the defendant's suspended sentence to be served at the Indiana Department of Correction.

Appellant's App. p. 169. Reyes now appeals.

## I. Admission of Retz's Affidavits

Reyes argues that the trial court abused its discretion when it admitted Retz's affidavits because Reyes was not given the opportunity to confront and cross-examine Retz. In response, the State asserts that Retz's affidavits bore substantial indicia of reliability and such reliability insures that admission of the affidavits did not violate Reyes's right to confrontation.

 "It is well settled that probationers are not entitled to the full array of constitutional rights afforded defendants at trial." *Cox v. State*, 706 N.E.2d 547, 549 (Ind.1999) (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 783, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); *Morrissey v. Brewer*, 408 U.S. 471, 480, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); *Isaac v. State*, 605 N.E.2d 144, 148 (Ind.1992)). However, the Due Process Clause of the Fourteenth Amendment imposes procedural and substantive limits on the revocation of the conditional liberty created by probation. *Id.* There are certain due process rights that inure to a probationer at a revocation hearing, which includes "the right to con-front and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation)." *Morrissey*, 408 U.S. at 489, 92 S.Ct. 2593; *see also Cox*, 706 N.E.2d at 549.

 "At the same time, a probation ... revocation hearing is not to be equated with an adversarial criminal proceeding." *Cox*, 706 N.E.2d at 550. Revocation of probation is a narrow inquiry and its procedures are more flexible, which allows "the court to exercise its inherent power to enforce obedience to its lawful orders." *Id.* Due to the flexibility of probation revocation procedures, strict rules of evidence do not apply. *Id.; see also* Ind. Evidence Rule 101(c) (2006). Moreover, during probation revocation hearings, "judges may consider any relevant evidence bearing some substantial indicia of reliability." *Cox*, 706 N.E.2d at 551.

Reyes concedes that the lab reports establishing that he had cocaine metabolites in his urine were properly admitted. *See* Br. of Appellant at 9. *See also Cox*, 706 N.E.2d at 550 n. 8 ("We find that the use in a probation revocation hearing of a regular urinalysis report prepared by a company whose professional business is to conduct such tests does not infringe upon a probationer's confrontation rights."); *Carter v. State*, 706 N.E.2d 552, 554 (Ind.1999) ("Urinalysis technology is hardly novel and has become a conventional means of drug-testing, the results of which have been deemed reliable in Indiana courts."). Nevertheless, Reyes argues that the admission of Retz's affidavit containing his opinion that Reyes used cocaine within seventy-two hours of the collection of his urine sample violated his right to confront and cross-examine adverse witnesses.

In *Morrissey*, the United States Supreme Court held that probationers have the right to confront and cross-examine

adverse witnesses during revocation hearings "unless the hearing officer specifically finds good cause for not allowing confrontation."[1] 408 U.S. at 489, 92 S.Ct. 2593. However, the Court also stated that revocation proceedings are narrow inquiries and "the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial." *Id.* Moreover, in commenting on the right to confront and cross-examine adverse witnesses since *Morrissey,* the Court has stated, "we emphasize that we did not in *Morrissey* intend to prohibit use where appropriate of the conventional substitutes for live testimony, including affidavits, depositions, and documentary evidence." *Gagnon,* 411 U.S. at 782, 93 S.Ct. 1756.

In *Cox,* our supreme court discussed three approaches taken by state and federal courts in addressing the "question of when hearsay evidence introduced at a probation revocation hearing violates the probationer's confrontation rights[.]" 706 N.E.2d at 550 n. 8. However, the court declined to adopt a particular approach in *Cox* because it was unnecessary to the resolution of the case. *Id.* Because this issue is one of first impression in Indiana, we turn to cases from other jurisdictions for guidance.

The majority of federal circuits have adopted a balancing test requiring the trial court "to weigh the confrontation interest of a parolee/probationer against the interests of the government." *See U.S. v. Kelley,* 446 F.3d 688, 692 n. 4 (7th Cir.2006) (citing *U.S. v. Rondeau,* 430 F.3d 44, 48 (1st Cir.2005); *Barnes v. Johnson,* 184 F.3d 451, 454 (5th Cir.1999); *U.S. v. Martin,* 382 F.3d 840, 844 (8th Cir.2004); *U.S. v. Hall,* 419 F.3d 980, 986 (9th Cir.2005); *U.S. v. Frazier,* 26 F.3d 110, 114 (11th Cir.1994)).[2] Some courts have also concluded that the trial court must make an explicit finding of good cause before admission of hearsay at a revocation hearing. *Id.* (citing *Barnes,* 184 F.3d at 454); *U.S v. Penn,* 721 F.2d 762, 764 (11th Cir.1983).[3]

In contrast, the Fourth, Seventh and Tenth Circuits have concluded that the need to show good cause vanishes when the hearsay evidence "bears substantial guarantees of trust-worthiness[.]"[4] *Kel-*

---

1. *Morrissey* specifically addressed a parolee's limited due process rights in parole revocation proceedings. The Court extended the *Morrissey* holding to probation revocations in its next term. *Gagnon,* 411 U.S. at 782, 93 S.Ct. 1756.

2. This "balancing test" approach has also been adopted by various state courts. *See e.g. State v. Yura,* 250 Kan. 198, 825 P.2d 523, 530 (1992); *State v. Casiano,* 667 A.2d 1233, 1239 (R.I.1995); *Mason v. State,* 631 P.2d 1051, 1056 (Wyo.1981).

3. Similarly, the Vermont Supreme Court has concluded, "in a probation revocation hearing, a trial court must make an explicit finding, and must state its reasons on the record, whether there is good cause for dispensing with the probationer's confrontation right and admitting hearsay into evidence." *State v. Austin,* 165 Vt. 389, 685 A.2d 1076, 1081 (1996).

4. The Maryland Court of Appeals has also adopted this approach. *See Bailey v. State,* 327 Md. 689, 612 A.2d 288, 293 (1992) ("We agree ... that 'a probationer's due process rights will be amply protected whenever proffered evidence bears substantial indicia of reliability.' ") (citation omitted).

 However, the Wisconsin Court of Appeals has specifically rejected this approach stating, "[w]e cannot agree, however, that the requirement of finding good cause ever simply vanishes. *Morrissey, Gagnon* and *Black [v. Romano,* 471 U.S. 606, 105 S.Ct. 2254, 85 L.Ed.2d 636 (1985)] hold unequivocally that hearing examiners must specifically find that good cause exists for not allowing confrontation of adverse witnesses. The Court made no exception for making this finding when evidence is reliable." *State ex rel. Simpson v. Schwarz,* 250 Wis.2d 214, 640 N.W.2d 527, 533 (App.2001). The court then adopted the "balancing test" approach, but also conclud-

*ley,* 446 F.3d at 692 n. 4; *see also U.S. v. McCallum,* 677 F.2d 1024, 1026 (4th Cir. 1982); *Kell v. U.S. Parole Comm'n,* 26 F.3d 1016, 1020 (10th Cir.1994). Similarly, the Court of Appeals for the District of Columbia has concluded, "[a]ll that is required before admitting evidence at a probation revocation hearing is a determination that the proffered evidence is reliable ... [and that determination] satisfies the requirements of the confrontation clause." *Harris v. U.S.,* 612 A.2d 198, 201–02 (D.C. 1992).

■ Our judgment is that the balancing test is the best approach.[5] Under this test, there are generally two major considerations: the reliability of the challenged hearsay testimony and the government's reason for declining to produce the declarant. The Eighth Circuit has described the balancing test as follows:

In assessing the government's position, the district court should consider, first, "the explanation the government offers of why confrontation is undesirable or impracticable" and, second, "the reliability of the evidence which the government offers in place of live testimony." "[W]here the government demonstrates that the burden of producing live testimony would be inordinate and offers in its place hearsay evidence that is demonstrably reliable, it has made a strong showing of good cause." If these conditions are met, out-of-court statements may be admitted at a revocation hearing without violating the defendant's limited confrontation right. "Where, on the other hand, the government neither

shows that presenting live testimony would be unreasonably burdensome nor offers hearsay evidence that bears indicia of reliability, the probationer is entitled to confrontation."

*Martin,* 382 F.3d at 844–45 (internal citations omitted). *See also Rondeau,* 430 F.3d at 48; *Barnes,* 184 F.3d at 454 ("An important consideration in this balancing is the reliability of the challenged testimony.").

■ In this case, the State did not specifically give a reason for failing to provide the live testimony of Retz. However, our review of the record leads us to the conclusion that it would have been burdensome to both the State and Retz to produce him as a witness. Retz is the Scientific Director of Witham Memorial Hospital Toxicology Laboratory, which is located in Lebanon, Indiana. Lebanon is approximately 130 miles from Decatur, Indiana, the location of the Adams Circuit Court. The Witham Lab "has performed thousands of 'drug screens' ... over the years for numerous county probation departments." Ex. Vol., State's Ex. 1 & 2. It would therefore be unreasonably burdensome to require the State to present the live testimony of Retz whenever a positive drug screen is the basis for a probation revocation.

Next, we consider the reliability of Retz's testimony. Retz, who has a Bachelor of Science degree in Chemistry, has been the Scientific Director of Witham Lab since 1992. Before he was employed at Witham Lab, Retz was a Laboratory Supervisor for the Indiana State Depart-

ed, "the more reliable the proffered evidence is, the less necessary it would be for the State to show that obtaining a witness's live testimony would be difficult." *Id.* at 534–535.

5. For the same reasons expressed by the Wisconsin Court of Appeals in *Schwarz,* see footnote 3, we decline to adopt the approach

utilized by the Seventh Circuit. The *Morrissey* and *Gagnon* decisions specifically require a finding of good cause for not allowing confrontation, and therefore, we cannot agree that the need to show good cause vanishes when the hearsay evidence is trustworthy.

ment of Toxicology. *Id.* In his capacity as the Scientific Director of the lab, Retz is "familiar with the procedures employed to ensure the chain of custody of samples, the testing of those samples and the validity of the test procedures employed by" Witham Lab. *Id.* Retz reviewed "all of the records in this laboratory in regard to the urine sample received which was labeled as a sample taken from: George Reyes, taken on 8/16/2005[.]" Ex. Vol., State's Ex. 2. In his sworn affidavit, Retz concluded that Reyes had used cocaine within seventy-two hours of the August 16th collection of Reyes's urine sample.[6] Under these facts and circumstances, we conclude that the hearsay statement in Retz's sworn affidavit concerning Reyes's cocaine use is reliable.

Therefore, under the balancing test adopted above, we conclude that good cause existed for denying Reyes his limited right to confront and cross-examine Retz, and the affidavits were properly admitted.

## II. Sufficient Evidence

■ Finally, Reyes argues that the record contains no basis for Retz's opinion that Reyes used cocaine within seventy-two hours prior to collection of his August 16, 2005 urine sample, and therefore, the evidence is insufficient to support the revocation of his entire 2070–day suspended sentence.

■ "Probation is a favor granted by the State, not a right to which a criminal defendant is entitled." *Sanders v. State,* 825 N.E.2d 952, 954–55 (Ind.Ct.App.2005), *trans. denied.* Moreover,

> [p]robation revocation proceedings are civil in nature. Therefore, the State is required to prove a violation by only a

preponderance of the evidence. When reviewing the determination that a probation violation occurred, we neither reweigh the evidence nor reassess witness credibility. Instead, we look at the evidence most favorable to the probation court's judgment and determine whether there is substantial evidence of probative value supporting revocation. If so, we will affirm.

*Marsh v. State,* 818 N.E.2d 143, 148 (Ind. Ct.App.2004) (internal citations omitted).

In arguing that there is no basis for Retz's opinion concerning Reyes's cocaine use, Reyes asserts, "[e]ven if it were properly admitted, the unsubstantiated opinion that was not subject to testing by cross-examination is not sufficiently reliable to constitute substantial evidence of probative value that Reyes used cocaine during the prohibited time period." Br. of Appellant at 18. Contrary to Reyes's argument, we have already determined that good cause existed for denying his right to confrontation and that the hearsay statement in Retz's affidavit is reliable.

In his capacity as the Scientific Director of Witham Laboratory, Retz reviewed the records regarding Reyes's August 16, 2005 urine sample. Based on his review of those records, Retz concluded that Reyes had cocaine in his system on August 16 and Reyes used cocaine within seventy-two hours prior to collection of the urine sample. The August 16, 2005 urine sample test results and Retz's opinion concerning Reyes's cocaine use constitute substantial evidence of probative value supporting the revocation of Reyes's 2070–day suspended sentence.

## Conclusion

Good cause exists in the record for denying Reyes's limited right to confront and

---

6. Moreover, in a telephone conversation held with Retz in the judge's chambers, Retz clearly restated his opinion that Reyes had to have consumed cocaine within seventy-two hours prior to collection of the urine sample. Tr. pp. 116–17.

cross-examine adverse witnesses and sufficient evidence supports the revocation of Reyes's 2070–day suspended sentence.

Affirmed.

FRIEDLANDER, J., concurs.

BARNES, J., concurs in result with opinion.

BARNES, Judge, concurring in result.

I concur in the result reached by the majority. However, I respectfully disagree with the way in which it reached that result. I believe that requiring the State to demonstrate the practical unavailability of a witness before being permitted to introduce reliable hearsay evidence during a probation revocation hearing is unnecessarily burdensome.

In my view, the Seventh Circuit has correctly concluded that if the State seeks to introduce substantially reliable hearsay during a probation revocation hearing, there is no need to additionally demonstrate that it would be impracticable to obtain the witness' presence at the hearing. See Kelley, 446 F.3d at 692.[7] As the majority notes, Morrissey holds that probationers or parolees facing revocation have a due process right "to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation)...." Morrissey, 408 U.S. at 489, 92 S.Ct. 2593. The Supreme Court, however, did not define the meaning of "good cause." It did state that the probation or parole revocation process "should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial." Id.

The Seventh Circuit, as well as the Fourth, Tenth, and District of Columbia Circuits, "essentially treats a finding of 'substantial trustworthiness' as the equivalent of a good cause finding for the admission of hearsay in the revocation context." Kelley, 446 F.3d at 692. I believe our supreme court has at least tacitly approved of this approach to the admission of hearsay evidence in probation revocation and other similar hearings. In Cox, as the majority notes, the court said it was unnecessary to adopt either the balancing approach or the substantial reliability approach to admitting hearsay during revocation hearings. See Cox, 706 N.E.2d at 550 n. 8. On the other hand, the court did state, "After a careful review of the record, we find that the trial court accorded Defendant his rights under the Due Process Clause...." Id. at 550. The court also said, "we hold that in probation and community corrections placement revocation hearings, judges may consider any relevant evidence bearing some substantial indicia of reliability. This includes reliable hearsay." Id. at 551 (footnote omitted). Although the Cox court obviously was aware that probationers facing revocation are entitled to certain due process rights, it placed no limitation on the use of hearsay in probation revocation hearings, aside from a showing of reliability.

The Cox court also expounded upon the need for flexibility in probation revocation procedures:

[Flexibility] is necessary to permit the court to exercise its inherent power to enforce obedience to its lawful orders.

There are also sound policy justifications for such flexibility. Alternative sentences such as probation and community corrections serve the humane pur-

---

7. Kelley also holds that Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), which limited the use of hearsay in criminal prosecutions, does not apply to probation revocation hearings. See Kelley, 446 F.3d at 689.

poses of avoiding incarceration and of permitting the offender to meet the offender's financial obligations. But for sentencing alternatives to be viable options for Indiana judges, judges must have the ability to move with alacrity to protect public safety when adjudicated offenders violate the conditions of their sentences. Put differently, obstacles to revoking an alternative sentence may diminish the likelihood of community corrections placements being made in the first place.

*Id.* at 550.

I agree wholeheartedly with these observations. I would also note that probation revocation hearings are common, occurring probably thousands of times a year in Indiana. Requiring the State to either procure a live witness or establish his or her practical unavailability, even though the State is able to produce a substantially reliable hearsay statement of the witness, has the possibility to create significant impediments to the State or a trial court moving "with alacrity" to address alleged probation violations committed by an already-convicted offender. The majority here notes the State sufficiently demonstrated that it would have been burdensome to produce Retz as a witness, because the lab he worked at has performed thousands of drugs screens and because it was located approximately 130 miles from the trial court. Even if the lab had been next door to the courthouse, however, Retz should not be expected to spend his valuable time attending probation revocation hearings to give live testimony that merely duplicates an already demonstrably reliable hearsay statement.

I fully agree with the majority's analysis regarding the substantial reliability of Retz's hearsay statements regarding the timing of Reyes's cocaine use. On that basis alone, I would affirm that Retz's statements were properly considered by the trial court and formed a sufficient evidentiary basis for the revocation of Reyes's probation.