NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Argued April 18, 2007
Decided June 21, 2007

**Before**

Hon. RICHARD A. POSNER, *Circuit Judge*

Hon. JOHN L. COFFEY, *Circuit Judge*

Hon. JOEL M. FLAUM, *Circuit Judge*

No. 06-3650

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Northern District of Indiana, South Bend Division |
| *v.* | No. 3:05-CR-00151(01)RM |
| RANDY G. WATTERS, *Defendant-Appellant*. | Robert L. Miller, Jr., *Chief Judge*. |

**ORDER**

Randy Watters was arrested and charged with possession with intent to distribute marijuana. *See* 21 U.S.C. § 841(a)(1). A jury found him guilty, and because the number of plants he was found to be cultivating or growing was 100 or more, he faced a mandatory minimum of 60 months' imprisonment, *id.* § 841(b)(1)(B). After the finding of guilt, the court imposed the minimum term of 60 months' imprisonment and four years of supervised release. Watters appeals and alleges that the court erred by not granting him relief under the "safety valve," *see* 18 U.S.C. § 3553(f); U.S.S.G. §§ 5C1.2, 2D1.1(b)(7). Watters has consistently denied that he intended to distribute any marijuana, nor has he provided the government with complete and truthful information concerning the offense. The court thus did not err in denying him relief under the "safety valve." We affirm.

## Background

In September of 2005 an Indiana State Police helicopter flew over Watters's property in Warsaw, Indiana. The trooper in a helicopter observed what he believed to be marijuana growing near Watters's house and based on this information the police obtained a search warrant for the premises. When they arrived at Watters's home, the marijuana plants they had observed from the helicopter were gone, and there was evidence that the plants had been recently extracted from the ground. Shortly thereafter the police observed Watters standing just outside his property line, surrounded by several piles of fresh marijuana plant material that had been placed on the ground and propped against trees to dry and furthermore he was observed harvesting buds from some of this plant material. The police were convinced that this marijuana came from the plants they had seen earlier from the helicopter. They discovered a total of some 100 stalks in number near the drying plant material. Most of the stalks had been covered with brush. Based on the number of (marijuana) stalks recovered and on another 29 live marijuana plants found growing just north of Watters's property, the police concluded that Watters had been growing some 100 plus plants in the area.

At trial Watters admitted that he possessed some marijuana for personal use but denied that he had grown marijuana intentionally or that he planned to distribute the seized marijuana. He admitted that in 1992 he returned from Jamaica with marijuana seeds and stated that he had thrown them on the ground in the area observed from the helicopter and never tended to them again. He stated that the sound of the police helicopter hovering over his property had alerted him to investigate, and at that time he discovered to his surprise that a number of further marijuana plants were growing in that location. Not wanting anyone to discover these plants, he pulled them out of the ground and took them to the area where they were discovered by the police. He stated that he placed them there to rot, but admitted having harvested some buds for his personal use. As for the 29 plants growing just north of his property, he asserted that he had no knowledge of those plants until the police "led" him to that location.

After the jury found him to be untruthful and less than credible and they rejected his fabricated story, Watters offered to be interviewed by the government as a prelude to qualifying for the "safety valve." The prosecutor's office declined the offer, rightly believing that Watters had been and was likely to be less than forthcoming and truthful. Having been denied an interview, Watters submitted a written "safety-valve" proffer on his own. In this proffer he admitted that he had possessed and used marijuana and named two men who had supplied him with relatively modest amounts of the drug. But he failed to admit to cultivating the marijuana found near his property, nor did he admit that he planned to distribute

this or any other marijuana. At his sentencing hearing he continued to deny that he intended to distribute marijuana.

The trial court for good reason refused to give Watters the benefit of the "safety valve" on the reasoning that he failed to provide the government with complete and truthful information about his offense. *See* U.S.S.G. §§ 5C1.2, 2D1.1(b)(7). The court, citing the number of plants found near Watters's property, expressly agreed with the jury's finding that Watters had intended to distribute the marijuana and rejected his proffer as insufficient because of his failure to identify the intended recipients of the drugs. The trial judge was convinced that Watters had not named all of his sources of marijuana. Thus, the court decided that he failed to comply with the requirements for the invocation of the "safety-valve."

## Analysis

The "safety valve" allows certain nonviolent, first-time drug offenders to escape an otherwise-applicable mandatory minimum sentence. 18 U.S.C. § 3553(f); U.S.S.G. § 5C1.2. In order to qualify, a defendant must meet five requirements. The only one at issue in this case is the fifth requirement: that "not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan . . . ." 18 U.S.C. § 3553(f)(5). Watters primarily argues that he never intended to distribute any of the marijuana found on or near his property and thus the district court should not have required that he name the potential distributees. But this argument is meritless because Watters had the burden of establishing that he met the fifth requirement, *United States v. Ponce*, 358 F.3d 466, 468 (7th Cir. 2004), and he could not do this by asserting that he never intended to distribute marijuana after a jury had found otherwise. The trial judge was certainly entitled to agree with the jury's verdict and reject Watters's fairy tale that he did not discover the 129 marijuana plants growing outside his house until the police showed up. *See United States v. Montes*, 381 F.3d 631, 636-37 (7th Cir. 2004). Furthermore this argument for various reasons actually undermines Watters's claim that he is entitled to the "safety valve." Certainly a defendant who denies even committing the underlying crime falls short of making a complete and truthful proffer to the government. *See United States v. Thompson*, 106 F.3d 794, 800-01 (7th Cir. 1995).

Watters next contends that, even assuming for the sake of argument that he did plan to distribute the marijuana, the court still should not have required him to name potential distributees because he might not at that time have decided who he wanted to distribute the drugs to. Furthermore, the court did not err by failing to consider this scenario because Watters never presented it to the sentencing judge. He always maintained that he never planned to distribute. If in fact, as Watters hypothesizes in his appellate brief, he did plan to distribute but had not decided on

potential distributees, he could easily have advised the district court and the government that this was the case.

Finally, at oral argument, Watters asserted that the district court erred in denying him relief under the "safety-valve" when the government refused to give him an opportunity to make a full proffer at a "safety-valve" interview. In *United States v. Brack*, 188 F.3d 748, 763 (7th Cir. 1999), we held that it was error for the district court to deny "safety-valve" relief on the ground of an incomplete proffer when the defendant submits a truthful written proffer and offers to submit to a "safety-valve" interview but is refused. We reasoned that the government cannot refuse to let a defendant "finish" his story and then argue that he does not deserve the "safety valve" because he has not revealed everything he knows. *Id.* Watters waived this argument by not developing it in his opening brief. *See United States v. Kelley*, 446 F.3d 688, 692-93 (7th Cir. 2006).

In any event, even if Watters had not waived this issue, his case is distinguishable from *Brack*. The district court in *Brack* did not decide whether the defendant was being untruthful and rested its decision solely on the incompleteness of the defendant's statement. *Id.* at 762-63. The trial court in this case, however, found that Watters was less than truthful during sentencing when he repeatedly claimed that he did not intend to distribute the marijuana he was growing. The court's decision properly focuses on the falsity of his fabricated statements and is necessarily based on a finding that Watters's statements were less than truthful as well as incomplete. Watters was not denied an opportunity to finish his story. Rather, he never really began telling his story since he has never admitted to the most basic elements of the offense of conviction.

AFFIRMED.